COMMONWEALTH *vs.* NEW ENGLAND TRANSPORTATION
COMPANY.

SAME *vs.* SAME.

Suffolk.  January 9, 1933. — March 30, 1933.

Present: RUGG, C.J., PIERCE, WAIT, DONAHUE, & LUMMUS, JJ.

*Interstate Commerce.  Carrier,* Of passengers: by motor bus.  *Motor Vehicle,* Bus.  *Constitutional Law,* Interstate commerce.

By contract between a railroad corporation, a steamship company and the owner of motor buses, a tour was arranged whereby passengers paid a single fare which covered all customary expenses throughout the tour and which, together with the terms and conditions of the transportation service rendered, was set forth in tariffs duly published and posted and filed with the Interstate Commerce Commission. Each tour was escorted and managed by a conductor in the employ of the steamship company.  The passengers were transported by that company in one of its ships from the city of New York to Fall River in this Commonwealth; and thence by the railroad corporation by train to Boston, where hotel accommodations were furnished.  After their arrival in Boston, they were transported in one of the motor buses to Lexington and Concord and back to the hotel.  The bus at that time was used exclusively for such passengers, and went over a route prescribed in advance in detail.  The passengers were accompanied by a lecturer employed by the owner of the bus, who pointed out places of interest.  The next day the passengers were carried in one of the buses to Plymouth, on which trip the driver of the bus answered passengers' questions.  After visiting places of interest in Plymouth, the passengers were carried to Martha's Vineyard and thereafter back to New York.  *Held,* that

    (1) The owner of the motor buses, while so transporting such passengers to Lexington, Concord and Plymouth, was engaged in interstate commerce;

    (2) St. 1931, c. 399, was inapplicable to him while engaged in such transportation.

TWO COMPLAINTS, received and sworn to in the Municipal Court of the City of Boston on July 13, 1932, and August 4, 1932, described in the opinion.

Upon appeal to the Superior Court, the defendant waived trial by jury; and the complaints were heard together by *Hall,* C.J., upon a single case stated.  Material facts are

stated in the opinion. The Chief Justice found the defendant guilty on each complaint. The defendant alleged exceptions.

*A. W. Blackman*, for the defendant.

*W. J. Foley*, District Attorney, & *H. J. Campbell*, Assistant District Attorney, for the Commonwealth, submitted a brief.

RUGG, C.J. Trial by jury upon these complaints was waived, they were submitted upon a single case stated, requests by the defendant for rulings were denied, the defendant was found guilty, fines were imposed, and sentences were stayed.

A single bill of exceptions by the defendant covering both complaints brings the cases here according to correct procedure applicable alike to civil and criminal practice. *Barrell* v. *Globe Newspaper Co.* 268 Mass. 99, 101–102.

The defendant is charged with violations of St. 1931, c. 399, on different dates. Its provisions, so far as here material, summarily stated are that no one in or from Boston shall furnish service by a sight-seeing automobile, in or on which guide service by the driver or other person is offered or furnished, unless such automobile is licensed by the police commissioner of Boston and unless a certificate declaring that public necessity and convenience require such operation is obtained from the department of public utilities. After public hearing, that department may issue or refuse to issue such certificate, may attach to the exercise of the privilege thereby conferred such terms and conditions as to fares (among other matters) as it may deem required by public necessity and convenience, and may make suitable and reasonable rules and regulations governing the fares and may revise, alter, amend and annul the same. Penalties are attached to violations of the statute and of any rule, order or regulation, and of any condition attached to the certificate of public necessity and convenience.

A main contention of the defendant is that its business, so far as here concerned, was exclusively interstate in nature and therefore not subject to the terms of the statute. The facts bearing upon this contention in brief are these: For

several years The New England Steamship Company, which operates lines of steamers between the city of New York and various places on the coast of New England including Fall River and New Bedford in this Commonwealth, has operated out of New York from the latter part of June to the early part of September "Mayflower Tours" so called.  Passengers on these tours leave New York on Sunday and return there on Thursday and pay a single fare for the entire trip, which includes all necessary expenses for the journey.  These Mayflower tours are extensively advertised in New York in newspapers and by other means, and the defendant participates under contract in the expenses thus incurred.  Coöperating with The New England Steamship Company, The Pennsylvania Railroad Company advertises these tours and delivers passengers who have begun the tour on its railroad to the steamer of The New England Steamship Company in New York.  Each of these companies sold to the patrons of the tours tickets with detachable coupons covering every part of the transportation from beginning to end, as well as steamship and hotel rooms and customary meals.  The New England Steamship Company is operated in interstate commerce by the New York, New Haven and Hartford Railroad Company under the authority of the United States.  The rates, terms and conditions of the transportation service rendered on these tours were set forth in tariffs or schedules of rates duly published and posted and on file with the Interstate Commerce Commission.  Accompanying each tour from the time it left New York until its return was an experienced conductor in the employ of The New England Steamship Company.  He made all arrangements for the comfort and convenience of its passengers and personally escorted, managed and guided the tour.  The route of the tours so far as concerns these cases was by steamship from New York to Fall River and by the New York, New Haven and Hartford Railroad from Fall River to Boston.  On Monday morning the tourists were transported from their hotel in Boston on one or more sight-seeing automobiles or buses of the defendant to Lexington and then to Concord, where

a stop was made for lunch, and then they were carried to the hotel in Boston.  On this part of the tour the party was accompanied by the escort who was the general guide, and by a lecturer employed by the defendant who pointed out places of interest.  Each bus was driven by an operator over a route prescribed in advance in minute detail, which neither the escort nor the lecturer was empowered to change.  One of the complaints against the defendant relates to this trip, which in its entirety was over highways within the Commonwealth.  On Tuesday the tourists were transported from their hotel in Boston by one or more sightseeing automobiles of the defendant to Plymouth.  On this journey no lecturer accompanied the tourists but the driver of the defendant, so far as able, answered questions asked by the members of the party.  On arrival in Plymouth the tourists alighted and visited places of interest on foot.  The tourists did not return to Boston but went to other places, including Martha's Vineyard, on the way back to New York.  Three charges in the complaints relate to trips on different dates, from Boston to Plymouth, over highways within the Commonwealth.

The automobiles used by the defendant on all these occasions were assigned to the exclusive use of the tourists pursuant to prior contract with The New England Steamship Company and the New York, New Haven and Hartford Railroad Company with respect to Mayflower tours.  While engaged in this transportation, no persons were carried as passengers except those who started on the tour from New York.  The automobiles assigned to these tours were operated irrespective of the numbers of passengers and there were at times several or many vacant seats.  No tickets in connection with these tours were sold by the defendant.  The only form of collection made by it was the coupon or ticket sold to each tourist in New York by The New England Steamship Company or by The Pennsylvania Railroad Company elsewhere.  The only revenue received by the defendant for its transportation of these tourists was that fixed and specified by the tariffs and prior contracts made with the other carriers involved.

The defendant had complied with all laws of the Commonwealth except St. 1931, c. 399, as to operation on the highways of the Commonwealth of its automobiles used in the transportation of these tourists as to registration, licensing, certificate of public necessity and convenience, insurance and safety appliances (G. L. [Ter. Ed.] cc. 90, 159A), and otherwise. Each driver of its automobiles had the license required of every driver of a motor vehicle and in addition the special license which issued to drivers of buses but was not required of interstate drivers.

At the times here material the defendant did not have a license from the police commissioner of Boston or a certificate of public necessity and convenience from the department of public utilities as required by St. 1931, c. 399. After the effective date of that statute the defendant, although not believing that its operations with respect to the tours as herein described were within its purview, applied respectively to the police commissioner of Boston for the license and to the department of public utilities for the certificate described in the statute. Each declined to act on the merits of the defendant's application mainly on the ground that the other had not first acted favorably.

The defendant was engaged exclusively in interstate commerce in its conduct challenged in these complaints. It was at the times alleged transporting in its automobiles persons who had bought tickets in other States entitling them to such transportation as part of a continuous and uninterrupted journey from those States, in part over the high seas, through portions of this Commonwealth and back to their initial point of departure. The persons purchasing and the carriers selling the tickets entertained a common purpose and were actuated by an identical intent that there should be a transportation from one State to another of which the transportation furnished by the defendant was an essential part. Whatever may be the precise meaning of interstate commerce under the power conferred upon Congress by art. 1, § 8, of the Constitution of the United States to regulate commerce among the several States, it is in any event a term of very broad signification

and manifestly includes such travel as that contemplated by all parties to the journeys here in issue. It "includes the transportation of persons and property. There may be, therefore, a movement of persons as well as of property; that is, a person may move or be moved in interstate commerce." *Hoke* v. *United States*, 227 U. S. 308, 320. *Hall* v. *DeCuir*, 95 U. S. 485. *Chiles* v. *Chesapeake & Ohio Railway*, 218 U. S. 71. *Gebardi* v. *United States*, 287 U. S. 112. *Commonwealth* v. *O'Neil*, 233 Mass. 535, 537. *Marconi Wireless Telegraph Co.* v. *Commonwealth*, 218 Mass. 558, and definitions of interstate commerce collected at page 565.

The circumstance that the transportation is broken in the way shown in the case at bar and a part occurs entirely within one State does not affect its interstate character. If the journey or carriage is in truth and fact a single chain of interstate transportation, one link of it located within a single State does not sever the interstate commerce and become a separate section subject to State control. *Commonwealth* v. *Peoples Express Co.* 201 Mass. 564, 574. *Cincinnati, New Orleans & Texas Pacific Railway* v. *Interstate Commerce Commission*, 162 U. S. 184, 192. *Rearick* v. *Pennsylvania*, 203 U. S. 507. *Baer Brothers Mercantile Co.* v. *Denver & Rio Grande Railroad*, 233 U. S. 479, 490–491. The case is distinguishable from *Pennsylvania Railroad* v. *Knight*, 192 U. S. 21, where the interstate journey had come to an end at the station of the interstate carrier and the cab service from the station to hotel or home was a distinct travel for which its appropriate fare was charged.

The State has broad powers. General regulations for the preservation of the highways, for the protection of the safety of travel, for the conservation of the public health, and in a somewhat restricted sense for the promotion of the general welfare, are valid even though interstate commerce and travel may be incidentally affected. Such regulations do not constitute an unlawful burden on interstate commerce. *Morris* v. *Duby*, 274 U. S. 135. *Clark* v. *Poor*, 274 U. S. 554. *Interstate Busses Corp.* v. *Blodgett*, 276 U. S. 245. *Continental Baking Co.* v. *Woodring*, 286 U. S. 352, 365–366. *Hendrick* v. *Maryland*, 235 U. S. 610. *Kane* v.

*New Jersey*, 242 U. S. 160. *Hess* v. *Pawloski*, 274 U. S. 352. *Interstate Transit, Inc.* v. *Lindsey*, 283 U. S. 183. *Sproles.* v. *Binford*, 286 U. S. 374, 389–390. See cases collected in *Commonwealth* v. *Peoples Express Co.* 201 Mass. 564, at page 578.

There are limits in this direction beyond which the State may not go. It was said in *Adams Express Co.* v. *Kentucky*, 214 U. S. 218, 223, quoting from *Atlantic Coast Line Railroad* v. *Wharton*, 207 U. S. 328, 334: "any exercise of state authority, in whatever form manifested, which directly regulates interstate commerce, is repugnant to the commerce clause of the Constitution." The State may not by legislation compel a private carrier to assume the burdens and obligations of a common carrier. *Michigan Public Utilities Commission* v. *Duke*, 266 U. S. 570. *Frost & Frost Trucking Co.* v. *Railroad Commission of California*, 271 U. S. 583.

In the case at bar the defendant was engaged in interstate transportation of passengers. That business was protected from discriminatory burdens imposed by the Commonwealth. If subject to the statute, the right of the defendant to conduct its business at all would be dependent upon a determination by the department of public utilities that such business was required by public necessity and convenience and upon a determination as to fares to be charged passengers to be carried by it. Within the sweep of powers would be comprised competency to decide that public necessity and convenience do not require the operation of the automobiles of the defendant on the tours in question and to establish fares different from those displayed in the tariffs or schedules of rates on file with the Interstate Commerce Commission. The business of the defendant, being interstate in nature, was not liable to be extinguished by the determination of a State board that it was not required by public necessity and convenience. Interstate commerce is conducted as matter of right under the Federal Constitution. That right cannot be denied by the several States. It is not dependent upon discretionary dispensations to be granted or refused by the several States

at their own volition. While the several States may in the absence of action by Congress cover a wide field of regulation of matters within their jurisdiction, *Commonwealth* v. *Nickerson*, 236 Mass. 281, 289–293, they may not make rights secured to individuals under the Federal Constitution dependent for exercise or enjoyment upon a consent which may be withheld. That would not be regulation but might involve prohibition or destruction. The power conferred upon the department of public utilities, according to the interpretation of the terms of the statute for which the Commonwealth contends, would warrant a denial of a certificate of public necessity and convenience upon the ground that there ought not to be further competition among sight-seeing automobiles already engaged in the business, or for other reasons. The rates, terms and conditions concerning the transportation services to be rendered by the defendant as well as by the other carriers participating in the tours were set forth in tariffs or schedules of rates filed with the Interstate Commerce Commission. This imports that the transportation was subject to the acts of Congress covering this field. It includes the fares charged by the defendant for services rendered in the cases at bar. It would be beyond the power of the General Court to interfere in a matter already taken over by Congress under jurisdiction conferred by the Federal Constitution.

Such power in the department of public utilities, if applied to the defendant, would, we think, unduly encroach upon interstate commerce. *Commonwealth* v. *O'Neil*, 233 Mass. 535, and cases reviewed. It would enable that department to determine the persons by whom, and not the manner in which, highways may be used in interstate commerce. That would transcend the power of the Commonwealth. *Buck* v. *Kuykendall*, 267 U. S. 307, 315. *George W. Bush & Sons Co.* v. *Maloy*, 267 U. S. 317. *Frost & Frost Trucking Co.* v. *Railroad Commission of California*, 271 U. S. 583. *Smith* v. *Cahoon*, 283 U. S. 553. *Barrett* v. *New York*, 232 U. S. 14, 31.

The circumstance that the defendant furnished guide

service on its automobiles is not enough in our opinion, to bring the transportation of the defendant here under inquiry within the scope of the statute. The expense of that service was contemplated as a part of the interstate tour. It was included in the fare charged for the interstate journey. It appears to be a legitimate adjunct of such a tour. Guide service might be regarded as essential to the enjoyment of a journey by strangers through "Historic New England," such as these tours were advertised to be. Without guide service the amount of interstate travel might be materially diminished. This single feature of the service provided by the defendant does not, we think, have the effect of subjecting its interstate transportation to the drastic provisions of the statute.

These considerations lead to the conclusion that it could not have been the design of the Legislature in enacting St. 1931, c. 399, that it should apply to interstate commerce such as that here shown to have been conducted by the defendant and made the basis of these complaints. It would be contrary to the commerce clause of the Federal Constitution if so applied, as already shown. It was said by the court speaking through Knowlton, C.J., in *Attorney General* v. *Electric Storage Battery Co.* 188 Mass. 239, 241: "a statute which would be unconstitutional as applied to a certain class of cases, and is constitutional as applied to another class, may be held to have been intended to apply only to the latter class, if this seems in harmony with the general purpose of the Legislature." *W. & J. Sloane* v. *Commonwealth*, 253 Mass. 529, 534. *Magee* v. *Commissioner of Corporations & Taxation*, 256 Mass. 512, 518. *Toland's Case*, 258 Mass. 470, 472. *Harrison* v. *Commissioner of Corporations & Taxation*, 272 Mass. 422, 426.

That principle is controlling in the cases at bar. It has been held in *Commonwealth* v. *Boston & Maine Transportation Co.*, *ante*, 345, that the statute has appropriate operation in governing intrastate or domestic transportation. It has thus been given scope and effect in relation to local transportation. It is valid in that field. We think that it was not intended by the General Court to be ap-

plicable to the facts here disclosed. In the main, the groups of requests for rulings touching regulation of interstate commerce and the scope of the police power were sound in law and ought to have been granted.

*Exceptions sustained.*