PAUL G. APGER vs. NEW YORK CENTRAL RAILROAD COMPANY.

HARRY SIBERT vs. SAME.

Suffolk.    November 7, 1941. — December 31, 1941.

Present: FIELD, C.J., DONAHUE, QUA, DOLAN, & RONAN, JJ.

*Motor Vehicle*, Operation, Nonresident, Interstate commerce. *Constitutional Law*, Interstate commerce, Equal protection of laws. *Interstate Commerce*. *Federal Motor Carrier Act*.

The operation of a motor vehicle of a nonresident in interstate commerce upon a public way in the Commonwealth on a ·day in 1938 more than thirty days after its first entry here in that year, without registration here and without the permit, although with the insurance, required by G. L. (Ter. Ed.) c. 90, § 3, as amended by St. 1933, c. 188, was illegal.

That a nonresident owner of a motor truck had a permit from the department of public utilities under G. L. c. 159B, as appearing in St. 1938, c. 483, § 1, did not relieve him of the requirement of obtaining a permit from the registrar of motor vehicles under c. 90, § 3, as amended by St. 1933, c. 188.

The requirement of G. L. (Ter. Ed.) c. 90, § 3, as amended by St. 1933, c. 188, that a nonresident obtain a permit from the registrar of motor vehicles for operation of a motor vehicle in the Commonwealth in certain circumstances, as applied to the owner of a motor truck engaged in interstate commerce, was not beyond the power of the Commonwealth because of the enactment of the Federal motor carrier act, nor an unreasonable burden on interstate commerce in violation of the commerce clause of the Federal Constitution, nor did it deny to the truck owner the equal protection of the law in violation of the Fourteenth Amendment to the Federal Constitution.

TWO ACTIONS OF TORT. Writs in the Municipal Court of the City of Boston dated December 6, 1938.

Upon removal to the Superior Court, the actions were heard by *Forte, J.*

*J. Schneider*, (*J. E. Reilly* with him,) for the plaintiffs.

*Joseph Wentworth*, for the defendant.

RONAN, J.  The plaintiff in the first case brought this action of tort to recover for personal injuries and for damage to his motor truck and trailer, which were struck by a

freight train, operated by the defendant, as the truck, driven by the plaintiff, was proceeding over a grade crossing on a public way in Cambridge at about noon on October 16, 1938. The plaintiff in the second case was riding in the truck at the time of the accident and received personal injuries for which he seeks damages. He had full knowledge of all matters concerning the registration of the truck, and no contention is made but that both of these cases must stand or fall together. The cases were heard in the Superior Court upon the report of an auditor and other evidence, and the judge in each case found for the defendant. The plaintiffs excepted to the denial of their request that G. L. (Ter. Ed.) c. 90, § 3, as amended by St. 1933, c. 188, is violative of the commerce clause, art. 1, § 8, and the Fourteenth Amendment to the Constitution of the United States "as it imposes upon interstate commerce an unreasonable burden and denies equal privileges and immunities to the citizens of other States."

Apger, hereinafter referred to as the plaintiff, was a resident of Akron, Ohio, during all of 1938, and he did not during that year reside in this Commonwealth or have any regular place of business here. His motor truck and trailer were duly registered by him in Ohio "and with the Interstate Commerce Commission" but neither the truck nor the trailer was registered under the laws of this Commonwealth and no permit had been issued to him under G. L. (Ter. Ed.) c. 90, § 3, as amended by St. 1933, c. 188. See now St. 1939, c. 335. We assume in favor of the plaintiff that the motor truck was transporting goods in interstate commerce at the time of the accident. The first trip that this truck made in this Commonwealth during 1938 occurred on January 18, and thereafter, and up to the time of the accident, it made eighteen trips each of a day's duration. Our law, in force at the time of the accident, limited the privilege of a nonresident to operate his motor vehicle upon the highways of this Commonwealth to a period of thirty days in any one year, commencing from the time he first operated upon the public ways in that year unless, after this period, he registered his automobile here or unless he

"maintains in full force a policy of liability insurance" and "unless the owner or operator of such motor vehicle or trailer, while operating the same during such additional time, has . . . a permit issued by the registrar which then authorizes the operation of such vehicle without registration under this chapter." St. 1933, c. 188. The plaintiff had liability insurance but no permit. The necessity for permit under this chapter was not eliminated by the permit which had been issued to the plaintiff by the department of public utilities in accordance with G. L. c. 159B, inserted by St. 1938, c. 483. The operation of this truck more than thirty days after January 18, 1938, without the required permit was illegal. *VanDresser* v. *Firlings*, 305 Mass. 51. *Boettjer* v. *Clark*, 305 Mass. 59. *Conningford* v. *Cote*, 308 Mass. 472.

All residents of the Commonwealth are required to secure registration of their motor vehicles, and no registration can be secured until the applicant has obtained liability insurance or furnished a bond that will run for the period for which registration is sought and which is to be used to secure the payment of certain damages that might be incurred by third persons from the operation of the motor vehicle. All nonresidents, at the time of the plaintiffs' accident, were permitted to operate their motor vehicles upon our highways for a limited period, and, after that, they were required to secure a permit from the registrar of motor vehicles which would not be issued unless the applicant had obtained a contract of insurance similar to that required of residents. In this way the public policy of the Commonwealth requiring compulsory liability insurance from resident owners was extended to nonresidents who desired to continue the operation of their vehicles upon our ways after the lapse of the limited period. The purpose of the permit was to produce readily available tangible evidence that the owner of the automobile furnished insurance for the protection of the public. It might be thought that many of the thousands of nonresident owners of automobiles, especially those who sojourn here during the summer season and who come from States that do not require

compulsory insurance, might not secure such insurance for operation of their vehicles here; at least the Legislature could so find and prescribe the permit as the method to compel them to obtain such insurance. Of course, there may be instances where the nonresident has such insurance, but in the absence of a permit he had no right after the limited period to operate his vehicle upon our ways. The Legislature could believe that such instances were comparatively few and that the safety of the public upon the ways would be better promoted and protected if all nonresidents after the prescribed period were required to have a permit. The Legislature had wide discretion in devising a plan that would eliminate the evil of uncompensated injuries caused to travellers by owners of automobiles who were unable to satisfy the claims of the victims of their negligence, and the plan requiring permits from all nonresidents after the limited period of operation is not to be struck down as it is not an unreasonable means for suppressing the use of uninsured vehicles, even if it included those few who might have already had such insurance. *Purity Extract & Tonic Co.* v. *Lynch,* 226 U. S. 192. *Hebe Co.* v. *Shaw,* 248 U. S. 297. *Euclid* v. *Ambler Realty Co.* 272 U. S. 365, 388. *Milliken* v. *United States,* 283 U. S. 15, 24. *Semler* v. *Oregon State Board of Dental Examiners,* 294 U. S. 608, 613. *Kentucky Whip & Collar Co.* v. *Illinois Central Railroad,* 299 U. S. 334, 353.

The question here raised is not likely again to be presented, because in the year following this accident, the Legislature, by St. 1939, c. 325, amended G. L. (Ter. Ed.) c. 90, § 3, by permitting the operation of vehicles owned by nonresidents without requiring them to register here or to secure permits, provided they have secured liability insurance to satisfy the claims that may arise from the operation of the vehicle.

It is urged that the provision of the statute requiring of nonresidents a permit to operate for any time beyond this thirty-day period does not apply to one like the plaintiff who is engaged exclusively in interstate commerce, and that, if it does, it violates the commerce clause of the Fed-

eral Constitution.   Prior to the enactment of the Federal
motor carrier act, U. S. C. Sup. IV, Title 49, §§ 301–327,
it had been uniformly held that a State, in the interest of
public safety and for conserving its public ways, had the
power to regulate the operation of motor vehicles thereon
including those engaged in interstate commerce as well as
those conducting the business of transporting persons or
property between points within the State, provided that
the regulations applied indiscriminately to both interstate
and intrastate commerce and that no unreasonable or un-
necessary burden was thereby directly imposed upon inter-
state commerce.   In reference to interstate vehicles, a State
could require the registration of such vehicles and the licens-
ing of their operators (*Hendrick* v. *Maryland,* 235 U. S. 610;
*Kane* v. *New Jersey,* 242 U. S. 160; *Morris* v. *Duby,* 274
U. S. 135), the securing of a certificate of public conven-
ience and necessity (*Buck* v. *Kuykendall,* 267 U. S. 307;
*George W. Bush & Sons Co.* v. *Maloy,* 267 U. S. 317; *Brad-
ley* v. *Public Utilities Commission of Ohio,* 289 U. S. 92),
the payment of a tax for the maintenance of the public
ways and for expenses in policing the ways (*Clark* v. *Poor,*
274 U. S. 554; *Eichholz* v. *Public Service Commission of
Missouri,* 306 U. S. 268), the payment of a reasonable
charge for the use of the ways (*Interstate Busses Corp.* v.
*Blodgett,* 276 U. S. 245; *Morf* v. *Bingaman,* 298 U. S. 407;
*Dixie Ohio Express Co.* v. *State Revenue Commission,* 306
U. S. 72; *Clark* v. *Paul Gray, Inc.* 306 U. S. 583), the ob-
taining of adequate insurance for the payment of judgments
recovered by persons other than passengers who were in-
jured by the operation of the vehicles (*Packard* v. *Banton,*
264 U. S. 140; *Sprout* v. *South Bend,* 277 U. S. 163; *Con-
tinental Baking Co.* v. *Woodring,* 286 U. S. 352; *Hicklin* v.
*Coney,* 290 U. S. 169; *Hodge Drive-It-Yourself Co.* v. *Cin-
cinnati,* 284 U. S. 335), that the weight and size of the
vehicle should not exceed certain limits (*Sproles* v. *Binford,*
286 U. S. 374; *South Carolina State Highway Department* v.
*Barnwell Brothers, Inc.* 303 U. S. 177), and the regulation of
the hours of employment for operators of motor vehicles
(*H. P. Welch Co.* v. *New Hampshire,* 306 U. S. 79).   It is

plain that, prior to the Federal motor carrier act, the Commonwealth had the power to require a permit of a nonresident owner of a motor vehicle engaged in interstate commerce for the operation of his vehicle upon the public ways after the expiration of the limited period allowed all nonresidents in which they might drive their automobiles along the ways without either liability insurance or a permit. *Continental Baking Co.* v. *Woodring*, 286 U. S. 352. *Hicklin* v. *Coney*, 290 U. S. 169. *Cochran* v. *M & M Transportation Co.* 112 Fed. (2d) 241.

But the plaintiff now contends that the Commonwealth, since the enactment of the Federal motor carrier act, did not have the right to require a permit from the plaintiff to entitle him to use the highways, because the power of the State in this respect over the operation of motor vehicles engaged in interstate commerce has been superseded and suspended by the congressional legislation last mentioned. It is undoubtedly true that, during the nonexercise by Congress of the regulatory power entrusted to it by the Constitution of the United States over interstate commerce, a State may regulate matters generally considered as of local concern although interstate commerce is thereby affected. It has been recognized that the use of its highways, constructed and maintained by a State at its own expense, is a subject peculiarly of local concern, and that a State may regulate such use for the promotion of safety and for the conservation of its ways although such regulations affect not only vehicles moving in intrastate commerce but also those engaged in interstate commerce. Whenever Congress has extended its power over an entire field, then there is no area within that field that a State may invade, and existing State statutes must yield to the paramount authority of Congress. *Kelly* v. *Washington*, 302 U. S. 1. *Commonwealth* v. *O'Neil*, 233 Mass. 535. *Commonwealth* v. *New England Transportation Co.* 282 Mass. 429. If Congress has taken over only a part of the field, then State legislation may still function in reference to matters of local concern that have not been withdrawn from the State by congressional action. It was recently said, with an abun-

dance of citations, in *California* v. *Thompson*, 313 U. S. 109, at page 113, that "it has been recognized that there are matters of local concern, the regulation of which unavoidably involves some regulation of interstate commerce, but which because of their local character and their number and diversity may never be adequately dealt with by Congress. Because of their local character, also, there is wide scope for local regulation without impairing the uniformity of control of the national commerce in matters of national concern and without materially obstructing the free flow of commerce. which were the principal objects sought to be secured by the Commerce Clause. Notwithstanding the Commerce Clause, such regulation in the absence of Congressional action has, for the most part, been left to the states by the decisions of this Court, subject only to other applicable constitutional restraints."

Our inquiry is whether our statute requiring a permit before a nonresident owner of a motor truck engaged in interstate commerce can lawfully operate his vehicle upon our highways after a limited period is in conflict with the Federal motor carrier act, or with any of the regulations of the interstate commerce commission established in pursuance to that act, which was passed for the purpose of establishing uniform regulations by the interstate commerce commission covering that portion of interstate commerce which is conducted by motor vehicles operating throughout various States. The commission is authorized to regulate different aspects of interstate motor transportation including the establishment of reasonable requirements to promote safety of operation. U. S. C. Sup. IV, Title 49, § 304 (a) (3). Regulations requiring the carrier to obtain liability insurance in certain amounts and in companies authorized to transact business in the States in which the carrier conducts his business have been prescribed by the commission, and the Commonwealth cannot now require an interstate carrier who has been licensed by the interstate commerce commission to procure additional or different liability insurance from that prescribed by the commission. *University Overland Express, Inc.* v. *Alsop,* 122 Conn. 275. *William Atkin*

*Co.* v. *National Liberty Ins. Co.* 168 Misc. (N. Y.) 334.
*Service Mutual Liability Ins. Co.* v. *United States*, 18 Fed.
Sup. 613. It is not to be lightly inferred that Congress in-
tended to withdraw wholly from the States all power to
regulate the use of their highways by vehicles engaged in
interstate commerce, and to render the States, which are
thoroughly familiar with particular dangers arising from
highway traffic and due principally and peculiarly to local
conditions, powerless to avoid traffic congestion, to avert
personal injuries to their citizens and to prevent disintegra-
tion of their public ways — all of which are matters inher-
ently connected with the administration of important func-
tions in the interests of their citizens. An act of Congress
is not to be interpreted as superseding all State statutes
dealing with some phase of interstate commerce unless such
intent is manifested by the language of the act and the scope
that Congress meant it to have for the accomplishment of
its apparent aim. *Kelly* v. *Washington*, 302 U. S. 1. *Cooley*
v. *Board of Wardens*, 12 How. 299. *Mintz* v. *Baldwin*, 289
U. S. 346. *Northwestern Bell Telephone Co.* v. *Nebraska
State Railway Commission*, 297 U. S. 471. Indeed it has
been held that the power to prescribe regulations for the
size and weight of interstate vehicles is still possessed by
the States, *Maurer* v. *Hamilton*, 309 U. S. 598, and that the
power of the interstate commerce commission to limit the
consecutive hours of labor of those employed in interstate
commerce by motor vehicles applies only to such employees
whose work is connected with the operation of the vehicles.
*United States* v. *American Trucking Associations, Inc.* 310
U. S. 534.

The plaintiff has not pointed out any provision of the
motor carrier act or any regulation of the interstate com-
merce commission that either expressly or by fair implica-
tion denies the power of the Commonwealth to require him
to have a permit and we are not aware of any such provi-
sion. Neither do we find that our statutory provision in
reference to a permit is in conflict with any of the provisions
of the Federal motor carrier act. This is not a case where
the plaintiff has been refused a permit or where his right to

operate the motor vehicle has been withheld by a State official. No one contends that he was not eligible to receive a permit or that one would not have been issued to him if he had applied for it. *Bradley* v. *Public Utilities Commission of Ohio*, 289 U. S. 92. In the absence of a permit, his motor truck was operated on the highway illegally and he could not recover against the defendant for the negligent operation of a freight train over the public crossing. *Van-Dresser* v. *Firlings*, 305 Mass. 51. *Boettjer* v. *Clark*, 305 Mass. 59. *Conningford* v. *Cote*, 308 Mass. 472.

There remains the contention of the plaintiff that, if the Commonwealth was empowered to require a permit from a nonresident owner of a motor vehicle, the application of such a requirement to him would be violative of the equal protection clause of the Fourteenth Amendment to the Constitution of the United States. The plaintiff's use of the public ways differed from the ordinary use made by citizens in travelling and transporting their property in the exercise of a right common to all. The plaintiff was using the ways for private gain derived from a commercial enterprise where the ways became an instrumentality by which the business was conducted. The plaintiff's business stood in substantially the same relation to the public ways as does the business of a railroad corporation to its roadbed. A classification by the State based upon that relationship could not be said to be without rational support if the State attempted to enact regulations governing the privilege of use by such carriers upon a basis somewhat different from that imposed upon other users of the highways. But no such regulations were made. Indeed no classification of nonresident owners of motor vehicles using our ways has been made. All nonresident operators were treated alike, whether they were driving pleasure or commercial vehicles. All were allowed a limited period of operation free from any requirement of insurance or a permit, and after the expiration of that period all were required to have both. No discrimination was made because of the nature of the commerce in which they might engage while here. There was no discrimination against interstate commerce. All nonresident

owners of motor vehicles stood on a parity. In fact nonresidents were treated more favorably than our own citizens since they enjoyed the privilege of operating here for thirty days without any permit, whereas our own citizens could not operate at all without registration and insurance. All nonresidents enjoyed the same privileges on equal terms. There was no violation of the equal protection clause. *South Carolina State Highway Department* v. *Barnwell Brothers, Inc.* 303 U. S. 177. *Dixie Ohio Express Co.* v. *State Revenue Commission,* 306 U. S. 72.

The plaintiffs have not argued that the statute requiring a permit abridges their privileges and immunities as citizens of the United States, and we treat the point as waived. *Commonwealth* v. *Dyer,* 243 Mass. 472, 508. *Boston* v. *Dolan,* 298 Mass. 346, 355–356.

*Exceptions overruled.*