**D. C. TRANSIT SYSTEM, INC.,**
Petitioner,

v.

**WASHINGTON METROPOLITAN AREA TRANSIT COMMISSION, Respondent.**

**W.M.A. Transit Company, Intervenor.**

No. 20188.

United States Court of Appeals
District of Columbia Circuit.

Argued Jan. 3, 1967.

Decided March 7, 1967.

Petition for Rehearing en banc
Denied April 13, 1967.

See also 121 U.S.App.D.C. 375, 350 F.2d 753.

Mr. Harvey M. Spear, New York City, with whom Mr. Manuel J. Davis, Washington, D. C., was on the brief, for petitioner.

Mr. Russell W. Cunningham, Arlington, Va., for respondent.

Mr. Stanley H. Kamerow, Washington, D. C., with whom Mr. Allan L. Kamerow, Washington, D. C., was on the brief, for intervenor.

Before FAHY, McGOWAN and TAMM, Circuit Judges.

McGOWAN, Circuit Judge:

This is an invocation of the power vested in us by Congress to review orders of the Washington Metropolitan Area Transit Commission. This review authority is but one facet of the Washington Metropolitan Area Transit Regulation Compact, Public Law 86–794, 74 Stat. 1031 (1960), which brought the Commission into being as part of a comprehensive scheme, transcending state lines, for the regulation of mass transit.[1]

1. The regulatory provisions are contained in a Compact entered into by Virginia, Maryland, and the District of Columbia.

The Compact is set forth in a statute wherein Congress has, as required by the Constitution, given its consent to it. Oth-

The orders under review directed two bus companies—Alexandria, Barcroft and Washington Transit Company, Inc. (ABW), and W.M.A. Transit Company (WMA)—to extend their routes from their present terminals at 11th and 12th Streets and Pennsylvania Avenue, N. W., to the vicinity of 18th and L Streets, N. W. The complainant here is D.C. Transit System, Inc. (Transit), which provides bus service within the District of Columbia generally and, in particular, along the route extensions of ABW and WMA ordered by the Commission. WMA has intervened here in support of the Commission's action. We have concluded, for the reasons hereinafter appearing, that that action must be set aside.

I

Transit has pressed upon us a number of respects in which it asserts the Commission has erred. We do not need to address ourselves to more than the essential premise upon which the Commission proceeded. This was that the grandfather certificates held by ABW and WMA encompassed the routes as extended, and that all that the Commission had to consider, before ordering ABW and WMA to provide the additional service, was whether there was any significant demand for it. As the Commission put the matter in its order under review, if what it termed the "crucial issue" of the scope of the grandfather certificates be decided in favor of an expansive reading of them, then the "secondary issue" of the public interest "can largely be determined by an inquiry into the demand for the proposed service." Thus it was that upon evidence designed to show that ABW and WMA riders would be convenienced by the route extensions and would make use of them, and without reference to the adequacy of the existing service being provided by Transit or the impact upon Transit and its riders of the resulting loss of revenue, the Commission commanded the enlarged service to be supplied. In so deciding, the Commission, in our view, unacceptably departed from the authority conferred upon it by the Compact.

When Congress consented to the Compact in 1960, it elected to treat the metropolitan area of Washington as a geographical unit, with the Commission as the central licensing and rate-making authority. No one could engage in the transportation covered by the Compact except upon its terms; and these included the issuance by the Commission of a certificate of public convenience and necessity. Recognizing the equities underlying the familiar "grandfather" approach, the Compact expressly contemplated the issuance of certificates, without new or further proof of public convenience and necessity, to those "bona fide engaged in transportation" on the effective date of the statute. ABW and WMA sought and were given such grandfather certificates. They were not put to any proof of public convenience and necessity. The transportation they were providing on the effective date of the Compact extended from various points in Virginia and Maryland, respectively, to their terminals at 11th and 12th Streets and Pennsylvania Avenue, N.W., in the District. Their grandfather certificates, by statutory definition, could cover no more, and, as issued, they do not purport to.[2]

er provisions of the statute, as distinct from the Compact, provide among other things that (1) the powers of the Public Utilities Commission of the District of Columbia with respect to transportation shall be suspended during the life of the Compact, and (2) the rights, duties, and obligations created by the Act of July 24, 1956, Public Law 757, 70 Stat. 598, granting a franchise to D. C. Transit System, Inc., shall not be impaired or affected by anything in the Compact or in the statute consenting to it. The statute consenting to and embodying the Compact is set forth in 1 D.C.Code §§ 1410–1416 (1961 ed.).

2. It is familiar law that the grandfather principle in public utility licensing is founded upon actual—and not potential—operations. United States v. Carolina Freight Carriers Corp., 315 U.S. 475, 62 S.Ct. 722, 86 L.Ed. 971 (1942). And see Holiday Tours, Inc. v. WMATC, 122 U.S.

## II

The Commission may, like most regulatory bodies, require existing certificate holders to extend their services beyond those previously authorized. This power is reposed in Section 4(e) of the Compact, the full text of which is set forth in the margin.[3] It will be observed that, in addition to a general finding of public convenience and necessity as a condition of such extension, there are precise limiting provisos applicable to those cases where the service extension is over the routes of another certificate holder. These are (1) that the latter's service is found to be inadequate, and (2) that, if so found, he be given a chance to remedy it. The Commission made no such finding in respect of Transit in this case.[4]

Before the advent of the Compact, a carrier coming into the District of Columbia from Maryland or Virginia needed certificate authority for this interstate service from the Interstate Commerce Commission. It was the practice of that agency to specify only the District of Columbia as the terminus of the service, leaving it to local regulatory authority to control the street routings and termini within the District. This latter authority for years was exercised by a Joint Board made up of the Public Utilities Commission of the District and the District Commissioners. It was from this source that ABW and WMA originally received the authority to traverse certain streets from the District line to the terminal points at 11th and 12th Streets and Pennsylvania Avenue. Prior to the Compact, they had no authority to extend their operations beyond these points.

The Commission now appears to assume that, since it has in effect succeeded to the authority of both the Interstate Commerce Commission and the Joint Board of the District of Columbia, it may treat ABW and WMA as being already clothed with certificate authority to go anywhere in the District that the Commission thinks desirable. On this theory, the protections of Section 4(e) of the Compact for existing certificate holders are not applicable, and the Commission need not regard route extensions of the kind here ordered as new and competitive grants of certificate author-

---

App.D.C. 196, 352 F.2d 672 (1965), and Gadd v. WMATC, 121 U.S.App.D.C. 7, 347 F.2d 791 (1965). There is no reason to suppose that Congress read the Compact language of "bona fide engaged in transportation * * * on the effective date of this Act" in any manner contrary to this principle. See also Nashua Motor Express, Inc. v. United States, 230 F.Supp. 646 (D.N.H.1964).

3. "The Commission may, if it finds that the public convenience and necessity so require, require any person subject to this Act to extend any existing service or provide any additional service over additional routes within the Metropolitan District; provided, however, that no certificate shall be issued to operate over the routes of any holder of a certificate until it shall be proved to the satisfaction of the Commission, after hearing, upon reasonable notice, that the service rendered by such certificate holder, over such route, is inadequate to the requirements of the public necessity and convenience; and provided, further, if the Commission shall be of opinion that the service rendered by such certificate holder over such route is in any respect inadequate to the requirements of the public necessity and convenience, such certificate holder shall be given reasonable time and opportunity to remedy such inadequacy before any certificate shall be granted to operate over such route; and further provided that no person subject to this Act may be required to extend any existing service or provide any additional service over additional routes within the Metropolitan District unless the carrier is currently earning a reasonable return on its operation as a whole in performing transportation subject to this Act."

4. Transit intervened in the proceedings instituted by the Commission looking toward an extension of the services of ABW and WMA; and it participated in the hearing. As the Commission's decisional order notes, Transit urged in opposition that it would lose "a great amount of traffic which it now handles via a transfer arrangement," and that new certificate authority could not, under Section 4(e), be given ABW and WMA without a finding as to inadequacy of Transit's service and the affording of an opportunity to Transit to repair any inadequacy found.

ity. We think this assumption is clearly at odds with the Congressional purposes to be discerned from the Compact and the statute approving it.[5] What the Joint Board or the Public Utilities Commission of the District of Columbia might have done before the 1956 franchise statute and the 1960 Compact are not the measure of the Commission's authority now.

■■ Transit has been given no exclusive and permanent monopoly. The Commission can, with due observance of the requirements of the statute and upon proper findings, grant certificate authority competitive with that held by Transit. What the Commission cannot do is to extend the routes in the District of ABW and WMA in a manner competitively adverse to Transit without taking into account the limiting conditions contained in Section 4(e), and that involves a concept of the public convenience and necessity which goes far beyond that of the riders of ABW and WMA alone.

■ There is no serious dispute here that the route extensions ordered will have a substantial financial impact upon Transit.[6] The Virginia resident who formerly had to continue his journey from 12th and Pennsylvania to 18th and L on Transit now can complete that journey on ABW without the need of using Transit. This may be a fine thing for him, but his convenience is not, under the regulatory scheme, the sole criterion. Transit has rights and responsibilities under that scheme as well. Its ability to provide good transportation service to the residents of the District of Columbia at reasonable rates is intimately related to the degree of utilization of its service. In transportation, as elsewhere, volume critically affects capacity to provide the best service at the lowest rates. To take away a part of Transit's volume by putting new competition on its routes may conceivably have a significantly adverse impact upon those bus riders in the District who must look to Transit for intra-District service.

We do not say that the Commission could under no circumstances do what it has done. What we do say is that such action must be taken in conformity with the statutory requirements and by reference to the statutory standards. That was clearly not done here; and accordingly, the route extensions for ABW and WMA ordered by the Commission must be set aside.

It is so ordered.

5. As remarked above, Note 1, Congress was careful to make clear that no rights of Transit under its franchise were to be impaired by the Compact. Section 3 of the franchise statute is as follows:

No competitive street railway or bus line, that is, bus or railway line for the transportation of passengers of the character which runs over a given route on a fixed schedule, shall be established to operate in the District of Columbia without the prior issuance of a certificate by the Public Utilities Commission of the District of Columbia (referred to in this part as the "Commission") to the effect that the competitive line is necessary for the convenience of the public.

We need not decide whether this adds anything to the more specific protections contained in Section 4(e) of the Compact,

but it emphasizes a Congressional concern that Transit was to be protected against competition except as such competition was found to be necessary to the public convenience. The latter concept would seem to embrace a broader view of the public interest than the Commission thought was involved in this case.

6. There was testimony by Transit that it would lose 17½¢ from the joint-fare arrangement previously in effect for each passenger from Virginia or Maryland who desired to continue by bus to the 18th and L Streets area. This was estimated as entailing a revenue loss of from $130,000 to $600,000 per year. The Commission's Staff witness, although not accepting the accuracy of these estimates, did not regard the differences as important because he would recommend the route extension in any event.