**D. C. TRANSIT SYSTEM, INC.,**
**Petitioner,**

v.

**WASHINGTON METROPOLITAN AREA TRANSIT COMMISSION, Respondent.**
Public Service Coordinated Transport, National Association of Motor Bus Owners, Intervenors.

**No. 22904.**

United States Court of Appeals District of Columbia Circuit.
Argued Oct. 22, 1969.
Decided Dec. 9, 1969.

---

———◆———

Mr. Manuel J. Davis, Washington, D. C., with whom Mr. Paul M. Cowgill, Jr., Washington, D. C., was on the brief, for petitioner.

Mr. Douglas N. Schneider, Jr., Washington, D. C., for respondent.

Mr. Thomas J. McCluskey, Maplewood, N. J., for intervenor, Public Service Coordinated Transport.

Mr. Robert J. Corber, Washington, D. C., was on the brief for intervenor, National Association of Motor Bus Owners.

Before BAZELON, Chief Judge, and McGOWAN and TAMM, Circuit Judges.

TAMM, Circuit Judge:

The sole question presented by this petition is whether the Washington Metropolitan Area Transit Commission erred in concluding that it lacked jurisdiction to regulate the operation of chartered bus tours originating and terminating outside of the metropolitan area. We find that the Commission correctly interpreted the jurisdictional provisions of the Washington Metropolitan Area Transit Regulation Compact, and thus we affirm.

## I. THE PROCEDURAL BACKGROUND

On March 3, 1967, D. C. Transit System, Inc. filed a complaint before the Washington Metropolitan Area Transit Commission, alleging that Public Service Coordinated Transport, a New Jersey corporation, was performing passenger service for hire between points in the Washington metropolitan area without a Commission certificate of public convenience and necessity, as required by the Compact. The National Association of Motor Bus Owners intervened in the action, and the parties entered into a stipulation of facts setting forth the kind of bus service that was the subject of the complaint. According to the stipulation, the typical charter service here in question originated at a point outside of the metropolitan area (in this instance, New Jersey) and lasted for a period of several days. The tour patrons were provided with overnight hotel accommodations in Washington, and were taken on sightseeing tours to points of interest in the District of Columbia and neighboring Virginia. All passengers departed from and returned to the same bus at each stop, and no passengers were either added to or subtracted from the original party during the term of the charter. This service was performed pursuant to certificates of convenience and necessity issued by the Interstate Commerce Commission.

After considering the parties' briefs and oral arguments the Washington Metropolitan Area Transit Commission ruled that this kind of service was not within the scope of its jurisdiction under the Compact as "transportation for hire * * * between any points in the Metropolitan District," and dismissed the complaint (App. 135). D. C. Transit's petition for reconsideration was subsequently denied (App. 166), and this petition for review was brought pursuant to Article XII, section 17(a) of the Compact (74 Stat. 1031, 1046 (1960)).

## II. THE STATUTORY CONTEXT

The outcome of this controversy depends upon the interpretation of section 1 of Article XII of the Compact, 76 Stat. 764–65 (1962), which provides:

1. (a) This Act shall apply to the transportation for hire by any carrier of persons between any points in the Metropolitan District and to the persons engaged in rendering or performing such transportation service, except—

* * * * * *

(4) transportation performed in the course of an operation over a regular

route, between a point in the Metropolitan District and a point outside the Metropolitan District, including transportation between points on such regular route within the Metropolitan District as to interstate * * * commerce, if authorized by * * * the Interstate Commerce Commission * * *.

Petitioner contends that the bus charter operations here in question include "transportation * * * between any points in the Metropolitan District," and that the exception contained in subsection (4) is inapplicable because these charter services are not performed over a "regular route." The Commission rejected this argument and held that the instant charter services do not constitute transportation between points in the District within the meaning of the Compact. The construction put on a statute by the agency charged with administering it is entitled to deference by the courts. NLRB v. Hearst Publications, Inc., 322 U.S. 111, 131, 64 S.Ct. 851, 88 L.Ed. 1170

(1944). Since the Commission has interpreted its governing statute in a reasonable manner, consistent with the legislative history and regulatory policies of the statute, we find no basis for overturning the administrative decision.

When the predecessor[1] of the present jurisdictional section of the Compact was being considered by Congress, the Interstate Commerce Commission objected to the provision on the ground that it would create confusion regarding the division of authority[2] between the Washington Metropolitan Area Transit Commission and the ICC. *See generally* Hearings on H.J.Res. 402 Before Subcomm. No. 3 of the House Comm. on the Judiciary, 86th Cong., 2d Sess., pt. 2, at 205, 242–243, 257–258, 261 (1960). In response to this concern, the House and Senate Judiciary Committees amended the jurisdictional section of the Compact and issued reports describing the intent underlying the amendment as follows:

The effect of this amendment from the standpoint of division of jurisdiction

---

1. In the original House Resolution containing the Compact, the relevant provisions of Article XII were as follows:

1. (a) This Act shall apply to the transportation for hire by any carrier of persons between any points in the Metropolitan District and to the persons engaged in rendering or performing such transportation service, except—

* * * * * *

(4) transportation performed in the course of an operation over a regular route, the major portion of which is outside the Metropolitan District except where a major portion of the passenger traffic begins and ends within the Metropolitan District;

* * * * * *

(b) No transportation or person, otherwise subject to this Act, shall be exempt by reason of the fact that any part (not a major part as conditionally exempted by paragraph (a) (4) of this section) of the route between points in the Metropolitan District lies outside of the Metropolitan District * * *.

Hearings on H.J.Res. 402 Before Subcomm. No. 3 of the House Comm. on the Judiciary, 86th Cong., 1st Sess., pt. 1, at 5 (1959). This language was contained in the Compact as enacted, 74 Stat. 1035–

1036 (1960), together with the following section (74 Stat. 1051):

Sec. 5. The consent of Congress is granted upon the condition that, within three years from the date of this enactment, section 1(a) (4) of article XII of the compact be amended as set forth below, and, in the event the compact is not so amended within such specified time, the suspension of the applicability of the laws of the United States * * * shall terminate with respect to the transportation specified below and any carrier whose only transportation over a regular route within the Metropolitan District is such transportation shall not be deemed a carrier subject to the compact * * *.

This provision is followed by the language of the present subsection four, which was enacted in 1962, and which is quoted in pertinent part in the text, *supra*.

2. Article VIII of the Compact, 74 Stat. 1034–1035 (1960), provides that Congressional approval "suspend[s] the applicability of the Interstate Commerce Act * * * and any other laws of the United States, to the persons, companies and activities which are subject to this Act, to the extent that such laws are inconsistent with, or in duplication of, the jurisdiction of the Commission * * *."

is to treat the metropolitan district as a State with the consequence that the Washington Metropolitan Area Transit Commission would have jurisdiction over purely intrametropolitan district transportation and the Interstate Commerce Commission would have jurisdiction over transportation crossing the metropolitan district boundaries. H.R.Rep. No. 1621, 86th Cong., 2d Sess. 22 (1960); S.Rep. No. 1906, 86th Cong., 2d Sess. 25 (1960); *see also* 106 Cong. Rec. 11,747 (1960). In its opinion dismissing D. C. Transit's complaint, the Commission took note of this aspect of the legislative history and pointed out that it was unable to find evidence that any state asserts regulatory jurisdiction over interstate carriers similar to that which petitioners contend is mandated by the Compact (App. 137). Indeed, a state attempt to impose regulation under similar circumstances has been held invalid as an unconstitutional burden on interstate commerce. *Commonwealth v. New England Transp. Co.*, 282 Mass. 429, 185 N.E. 23 (1933).

Thus, the legislative history of the Compact lends support to the Commission's conclusion that the kind of charter operation here in issue was properly considered as a single continuous journey in fact and in law, and should not be subdivided artificially into component parts.[3] This approach also appears to be consistent with the rationale advanced in *Universal Interpretive Shuttle Corp. v. WMATC*, 393 U.S. 186, 189, 89 S.Ct. 354, 356, 21 L.Ed.2d 334 (1968), where the Supreme Court stated that the statutes governing mass transit in the metropolitan area should be construed so as to avoid "dual regulatory jurisdiction overlapping on the most fundamental matters." Clearly, overlapping jurisdiction with all of its deleterious consequences would result from petitioner's interpretation of the Compact.[4] The Commission took note of one difficulty which would arise if it were compelled to assert jurisdiction in this situation (App. 138):

There are literally thousands of buses and millions of persons who come here under similar circumstances annually. Acceptance of complainant's position would mean that all those persons would be subjected to the inconvenience and expense of transferring to local carriers for their visits throughout the city while the vehicles that brought them here lay idle.

Intervenor National Association of Motor Bus Owners points out another problem which could result from petitioner's construction of the Compact: if tourists were forced to use locally certificated carriers like D. C. Transit for sightseeing in the Washington metropolitan area, the interstate carriers on which they traveled here might be vulnerable to the argument that the return portion of the trip was the "origination" of a charter in violation of the certificates issued by the Interstate Commerce Commission. On the other hand, if a substantial number of interstate carriers elected to apply for local certificates, the Washington Metropolitan Area Transit Commission could be overwhelmed with applications, and its ability to discharge more important duties could suffer.

---

3. The conceptual difficulties which would result from severing the local portions of these charter tours for Commission regulation can be seen in the attempts made by petitioner's counsel in oral argument before the Commission to distinguish between sightseeing stops in the metropolitan area, which assertedly should invoke the jurisdiction of the Commission, and equally brief rest or refueling stops, which apparently should not. *See* App. 218–221.

4. The jurisdictional overlap resulting from petitioner's construction of the Compact might not be as extensive in theory as that which concerned the Supreme Court in *Universal Interpretive Shuttle*, since the Compact suspends the applicability of inconsistent provisions of the Interstate Commerce Act (*see* note 2, *supra*). As noted below, however, the jurisdictional overlap in the present case might well have more serious practical consequences than the regulatory duplication threatened in *Universal Interpretive Shuttle* because of the large number, economic value, and geographic dispersion of the instant charter operations.

All of these practical difficulties would create expense and delay, and it seems probable that this burden would be passed on to the users of these charter services, making it difficult or impossible for many citizens to visit the Nation's Capital. At the same time, acceptance of the Commission's strict construction of the jurisdictional section will not impede performance of the function which is recognized in the legislative history[5] and case law[6] as the primary objective of the Compact: uniform and efficient regulation of mass transportation for commuters within the Washington metropolitan area. The petitioner's contention that it may be vulnerable to ruinous competition at the hands of interstate carriers which are not subject to the restrictions of local certification was unexplained and unsupported by any proffer of evidence, and we cannot accord substantial weight to such a speculative assertion.[7] Similar considerations apply to the argument that affirmance of the Commission's order will frustrate one of the major objectives of the Compact, the alleviation of traffic congestion within the metropolitan area. On the basis of the record now before us, it is not immediately apparent how any substantial incursion on the area's traffic problems would result from either making tourists transfer to local carriers for sightseeing, or requiring out-of-state carriers to obtain local certification. In any event, neither of these factors has more than tangential relevance to the problem of divining the Congressional intent underlying Article XII, section 1 of the Compact; and we believe that the Commission correctly assessed the available evidence bearing on this question.

Affirmed.

---

5. *See, e. g.*, Hearings on H.J.Res. 402 Before Subcomm. No. 3 of the House Comm. on the Judiciary, 86th Cong., 1st Sess. 55–57 (1959).

6. *See* Universal Interpretive Shuttle Corp. v. WMATC, 393 U.S. 186, 89 S.Ct. 354, 21 L.Ed.2d 334 (1968); Alexandria, Barcroft & Wash. Transit Co. v. WMATC, 323 F.2d 777 (4th Cir. 1963).

7. A major portion of petitioner's economic concern seems to arise from the fact that operators of charter services similar to those here in issue are not required to pay licensing fees to the District of Columbia (as they might be under the powers reserved to the signatories by Article VII of the Compact) unless they have operated the vehicle in question within the District for fifteen days out of the year. 47 D.C.Code § 2331(c) (1967). If this is really the thrust of petitioner's economic anxiety, its complaint is clearly addressed to the wrong forum.

It is true, of course, that D.C. Transit serves the interest of its riders in the District of Columbia when it is zealous to defend its franchise from unauthorized competition. *See* D.C. Transit System, Inc. v. WMATC, 126 U.S.App.D.C. 210, 376 F.2d 765, cert. denied, 389 U.S. 847, 88 S.Ct. 52, 19 L.Ed.2d 115 (1967). The revenues derived from its sightseeing operations are credited against its total cost of service, and the larger the credit the less the need for fare increases in its regular operations. The difficulty here is that Congress has determined as a matter of policy that sightseeing operations originating and terminating outside of the area regulated by the Commission may be carried on inside it without the necessity of procuring authority from the Commission.