## COMMONWEALTH *VS.* BRYAN C. ROBIE.

No. 99-P-1279.

Barnstable. January 17, 2001. - May 8, 2001.

Present: RAPOZA, SMITH, & GILLERMAN, JJ.

*Constitutional Law,* Search and seizure. *Search and Seizure,* Threshold police inquiry, Automobile, Consent.

The record of the hearing on a criminal defendant's motion to suppress items seized as a result of a warrantless search of his vehicle, after a police officer had lawfully stopped him for speeding and properly requested his license and registration, amply supported the judge's finding that the defendant's consent to search the vehicle was properly obtained. [497-498]

Where the issue of the lawfulness of a police officer's request that the driver of a vehicle stopped for speeding step out of the vehicle was not raised at a hearing on a motion to suppress items seized as a result of a warrantless search of the vehicle, the driver was precluded from raising the issue on appeal; however, had the driver raised the issue, there was sufficient justification, in the circumstances, for the police officer's request. [498-499]

There was no merit to a criminal defendant's claim that police did not have probable cause to seize items found in the defendant's vehicle after he was stopped for speeding, where the evidence demonstrated that the defendant voluntarily consented to the police seizing the items and retaining them pending their investigation. [499]

INDICTMENTS found and returned in the Superior Court Department, two on January 20, 1998, two on February 10, 1998, and one on April 28, 1998, respectively.

A pretrial motion to suppress evidence was heard by *Richard F. Connon,* J., and the cases were heard by *John M. Xifaras,* J.

*Frederick C. Mycock* for Bryan C. Robie.

*Thomas G. Shack, III,* for the Commonwealth.

SMITH, J. After a bench trial in Superior Court, the defendant was convicted of indictments charging him with breaking and entering a dwelling house in the daytime with intent to commit a felony, burglary, and receiving stolen goods.

Prior to his trial, the defendant filed a motion to suppress items seized as a result of a warrantless search of his vehicle. After an evidentiary hearing, a Superior Court judge (motion judge) denied the suppression motion, concluding that the defendant had consented to the search of his vehicle and the seizure of the items in question. On appeal, the defendant challenges the motion judge's denial of his motion.

In ruling on the suppression motion, the motion judge made findings of fact which are binding upon us unless clearly erroneous. *Commonwealth* v. *Colon-Cruz,* 408 Mass. 533, 538 (1990). We summarize those facts, supplemented by uncontested testimony at the suppression hearing. *Commonwealth* v. *Rivera,* 33 Mass. App. Ct. 311, 312 (1992).

On October 30, 1997, at approximately 7:45 P.M., Officer Richard Troy of the Dennis police department was on routine patrol on Lower County Road in Dennis when he observed a vehicle turn onto Lower County Road from Old Wharf Road, and then accelerate to a speed above the posted speed. Officer Troy followed the vehicle in his marked car without any display of emergency lights. The vehicle, operated by the defendant, who was alone in the vehicle, turned onto Lighthouse Road where it was stopped by Officer Troy.

Officer Troy approached the driver's side of the vehicle and requested the defendant's license and registration. The defendant asked the officer for permission to reach into the rear passenger area to retrieve his operator's license. Having been given that permission, the defendant produced the license from the floor area under the mat. The defendant did not produce the vehicle's registration, stating that it was in his wallet which he did not have with him.

As the defendant reached into the rear passenger area, Officer Troy observed in that area a blue windbreaker, a dark blue watch-style cap, a knit cap, two pairs of work gloves with rubberized palms, and a pair of gloves similar to weight-lifting gloves, i.e., gloves with no fingers.

Because the defendant appeared to be nervous, Officer Troy asked him where he had been. The defendant responded that he had gone to visit a friend, James Ramsey, in Dennisport, but he was not home. The defendant said that he was on his way home

when stopped. Officer Troy was familiar with Ramsey and where he lived.

Officer Troy then went to his cruiser and radioed the police station for a routine license and warrant check. During the radio transmission, Detective Wunderlich of the Dennis police department was passing through the dispatch area. He overheard the defendant's name and told Officer Troy to call him back on a cellular telephone. Officer Troy complied with the request, and the detective asked him where the defendant had said he was coming from. He then told Troy that, at a detective's meeting that day, the defendant's name had been mentioned as a suspect in several housebreaks on Cape Cod.

After talking to Detective Wunderlich, Officer Troy wrote out a warning for speeding and returned to the defendant's vehicle. Officer Troy again asked the defendant where he had been. The defendant repeated that he was coming from Ramsey's house. Officer Troy was familiar with the location of Ramsey's home and told the defendant that he was coming from a different direction than Ramsey's home. The defendant then indicated that· after going to Ramsey's house, he went to the Dennisport House of Pizza. Once again, Officer Troy told the defendant that his direction of travel was not consistent with coming from the Dennisport House of Pizza. The defendant appeared extremely nervous at this point.

Officer Troy asked the defendant to step out of the vehicle and the defendant complied. After the defendant got out of the car, Officer Troy handed him the warning citation and gave him Miranda warnings.

Officer Troy then asked the defendant for permission to search his vehicle. The defendant agreed. Officer Troy also asked the defendant if he had any weapons in the vehicle. The defendant responded that he had a knife in a sheath wedged between the front seat and the console. For reasons of his safety, Officer Troy asked the defendant to sit in the back seat of his cruiser during the search of the defendant's vehicle. The defendant agreed.

Detective Wunderlich arrived during the search and assisted Officer Troy. The officers found several jewelry items in the back seat, in particular, rings with the stones removed and loose

stones. They also found a torn envelope with the name of a Chatham resident on it. An investigation later revealed that the resident's home had been the subject of a recent burglary. A marijuana roach was also found in the ashtray.

The officers asked the defendant about the various items they had discovered as a result of the search. The defendant responded that he had purchased the vehicle nine months earlier and the jewelry items were in the car when he purchased it, and he had not had the time to remove them.

Officer Troy asked the defendant to follow the two officers to the police station in his own vehicle so that they could continue the investigation. The defendant agreed, and, operating his own vehicle, drove to the police station. There, the defendant gave his consent to the police to keep the items found in his vehicle for investigative purposes. The defendant was not charged with any crime at that time and was allowed to leave the station. A warrant for his arrest was issued the next day and the defendant was arrested that day.

1. *Consent to search the vehicle.* The defendant claims that, although he consented to the search, it was improper. According to the defendant, once he was handed the written warning for speeding, Officer Troy should not have detained him further. Therefore, his consent to search the vehicle was improperly obtained. See *Commonwealth* v. *Bartlett*, 41 Mass. App. Ct. 468, 471 (1996).

"It is well settled that a police inquiry in a routine traffic stop must end on the production of a valid license and registration unless the police have grounds for inferring that 'either the operator or his passengers were involved in the commission of a crime . . . or engaged in other suspicious conduct' (citations omitted)." *Commonwealth* v. *Torres*, 424 Mass. 153, 158 (1997), quoting from *Commonwealth* v. *Torres*, 40 Mass. App. Ct. 6, 9 (1996).[1]

Here, there were a number of suggestive factors, each of which, by itself, would not be enough to detain the defendant

---

[1]It is undisputed that the defendant did not have the vehicle's registration on his person or in the vehicle, in violation of G. L. c. 90, § 11 ("Every person operating a motor vehicle shall have the certificate of registration for the vehicle . . . upon his person or in the vehicle . . ."). A violation of the

but when combined amounted to reasonable suspicion that the defendant had committed a crime. See *Commonwealth* v. *Rivera*, 33 Mass. App. Ct. 311, 314-315 (1992). Those factors included the unusual place from where the defendant retrieved his driver's license, the particular articles of clothing, including the three pairs of gloves, the defendant's extreme nervousness and evasive answers to Officer Troy's questions as to where he had been, and Detective Wunderlich's information that the defendant was a suspect in several housebreaks on the Cape. Thus, Officer Troy could detain the defendant for further inquiry. Contrast *Commonwealth* v. *Bartlett, supra* at 470-472. While detained, the defendant gave his consent to search his vehicle. The judge's finding that the consent was voluntarily given was supported by the evidence. See *Commonwealth* v. *Franco,* 419 Mass. 635, 642 (1995) (fact that defendant consented to the search after being seized by the police does not preclude a finding that the consent was voluntarily given).

On appeal, the defendant challenges for the first time the lawfulness of the exit order, citing *Commonwealth* v. *Gonsalves,* 429 Mass. 658 (1999). In *Gonsalves,* the court held that art. 14 of the Declaration of Rights of the Massachusetts Constitution requires that where there is a routine traffic stop, the Commonwealth must show that a police officer had a reasonable belief that the officer's safety, or the safety of others, was in danger before ordering a driver or passengers out of a vehicle. *Id.* at 661-662.

The decision in the *Gonsalves* case was foreshadowed by *Commonwealth* v. *Santana,* 420 Mass. 205 (1995), where the court made it explicit that "[t]o determine whether [an exit] order was justified, we ask 'whether a reasonably prudent man in the policeman's position would be warranted in the belief that the safety of the police or that of other persons was in danger.' " *Id.* at 212-213, quoting from *Commonwealth* v.

---

statute calls for a fine of not more than thirty-five dollars for the first offense. See G. L. c. 90, § 20. There is no explanation in the record as to why Officer Troy failed to cite the defendant for this violation.

In any event, the Commonwealth does not argue that the failure of the defendant to have the registration with him takes this matter out of the "routine traffic stop" cases.

*Almeida,* 373 Mass. 266, 271 (1977). Two years later, the statement in *Santana* was reiterated in *Commonwealth* v. *Vazquez,* 426 Mass. 99, 102-103 (1997).

The defendant's suppression motion was filed on August 18, 1998. There was no mention of the lawfulness of the exit order in the defendant's motion. See Mass.R.Crim.P. 13(a)(2), 378 Mass. 871 (1979) (suppression motion "shall state the grounds on which it is based and shall include in separately numbered paragraphs all reasons, defenses, or objections then available, which shall be set forth with particularity").

Because the issue of the exit order was not raised below, there is little evidence on this issue at the suppression hearing. "Because the defendant did not alert the [motion] judge to this argument, the waiver doctrine precludes him from doing so on appeal." *Commonwealth* v. *Rivera,* 429 Mass. 620, 623 (1999). Even, however, if the defendant had raised the issue, we would find the exit order to be lawful.

There was evidence at the hearing that Officer Troy was alone, it was dark, and the stop took place on a side street. Before the exit order, Officer Troy had reasonable suspicion that the defendant had committed a series of felonies, i.e., burglaries. Under these circumstances, there was sufficient justification for the exit order. See *Commonwealth* v. *Torres,* 433 Mass. 669, 673-674 (2001) ("[T]he facts support not only the officer's reasonable belief that his safety . . . was in danger, but also that criminal behavior in addition to the traffic violation was afoot, and was the proper subject of further police investigation").

2. *Seizure of the items.* The defendant claims that the police did not have probable cause to seize the items found in the defendant's vehicle. The short answer is that the evidence demonstrated that the defendant voluntarily consented to the police seizing the items and retaining them pending their investigation.

*Denial of suppression
motion affirmed.*

*Judgments affirmed.*