## COMMONWEALTH vs. KRISTIAN A. CHOWN.

No. 07-P-1760.

Barnstable. December 19, 2008. - April 29, 2010.

Present: KANTROWITZ, MILLS, & TRAINOR, JJ.

Further appellate review granted, 457 Mass. 1107 (2010).

*Practice, Criminal,* Motion to suppress. *Probable Cause. Motor Vehicle,* License to operate. *Search and Seizure,* Probable cause. *Constitutional Law,* Search and seizure, Probable cause.

A Superior Court judge erred in granting a criminal defendant's pretrial motion to suppress drugs, money, and other evidence seized by police during an inventory search of the defendant's vehicle following the defendant's arrest at a traffic stop, where the police officer stopping the defendant's vehicle had a reasonable belief that the defendant was a Massachusetts resident driving without a Massachusetts license and, thus, had probable cause to arrest the defendant without a warrant. [687-690] TRAINOR, J., dissenting.

INDICTMENT found and returned in the Superior Court Department on May 12, 2006.

A pretrial motion to suppress evidence was heard by *Richard F. Connon, J.*

An application for leave to prosecute an interlocutory appeal was allowed by *Margot Botsford,* J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by her to the Appeals Court.

*Julia K. Holler,* Assistant District Attorney, for the Commonwealth.

*Robert A. George* for the defendant.

KANTROWITZ, J. As a police officer reasonably believed that the defendant was a resident of Massachusetts and needed a Massachusetts driver's license to drive here, probable cause to arrest for a violation of operating a motor vehicle without a license existed. See G. L. c. 90, §§ 10, 21. The stop being valid, drugs, money, and other evidence were appropriately seized. As such, we reverse the allowance of the defendant's motion to suppress.

*Facts.* We take our brief recitation of the facts from findings made by the motion judge and supplement those with additional undisputed testimony from the suppression hearing. See *Commonwealth* v. *DePeiza*, 449 Mass. 367, 368 (2007).

The defendant worked as a bartender at the Naked Oyster restaurant in Hyannis. On the evening of January 20, 2006, he drove his pickup truck from the parking lot of the restaurant and was observed exceeding the speed limit by Sergeant Kevin Tynan of the Barnstable police department.

When Sergeant Tynan pulled the truck over, he noticed that it had license plates from New Brunswick, Canada, and that its rear window had been smashed, with weather stripping hanging out. The sergeant, a frequent patron of the restaurant, immediately recognized the driver,[1] whom he also knew from various interactions over the past several years.[2]

The defendant presented Sergeant Tynan with a New Brunswick driver's license, with an expiration date of July 8, 2007, but could not produce the truck's registration. Tynan had personal prior knowledge that the defendant previously had a Massachusetts driver's license. When asked why he did not have a Massachusetts driver's license, the defendant replied that he was planning to go to the Registry of Motor Vehicles (Registry) the following morning to obtain one.

Tynan returned to his cruiser to run a Registry record check, which revealed a lengthy history of in-State motor vehicle violations, dating back to 1989, with various suspensions and reinstatements.[3] The validity of the Canadian registration, however,

---

[1]Sergeant Tynan testified to having seen the defendant four or five times at the restaurant. The defendant testified that he worked part time at the Naked Oyster, beginning sometime after the restaurant opened in 2000 or 2001, and then for a period of approximately three years up to the time of the arrest in 2006. He also testified that he did not have any other job during this period.

[2]On November 23, 2002, for reasons unclear from the record, Tynan had gathered information from the defendant, including his address of 585 Old Falmouth Road, Marstons Mills, and occupation as a bartender at the Naked Oyster. On June 8, 2003, again for reasons unclear from the record, Tynan booked the defendant, who again provided 585 Old Falmouth Road, Marstons Mills, as his address. In 2005, Tynan went to that same address in response to a home invasion call made by the defendant and his then girlfriend, who was living there at the time.

[3]The Commonwealth, in its brief, notes other information ascertained from

could not be discerned because the officer only had access to Registry information from the United States.

After Tynan gathered all of this information, the defendant was arrested for operating without a driver's license. The officer informed him that he was also being charged with not having his registration in possession and speeding.[4]

The defendant's vehicle needed to be secured because of its location in a public lot with a missing rear window. Tynan conducted an inventory search of the vehicle as per the police department's inventory policy. During the search, he noticed a strong odor of marijuana emanating from the back seat. There he discovered a backpack containing drugs.[5] He also saw a "dump sticker" for the Barnstable transfer station affixed to the window of the defendant's truck.

At the motion hearing, the prosecutor correctly identified the issue — the residency of the defendant — and offered evidence to that effect. Sergeant Tynan testified that he based the arrest on his belief that the defendant was a resident of Massachusetts and that since he did not have a Massachusetts license, he was in violation of G. L. c. 90, § 10. The motion judge concluded that based on the information available at the time, Tynan lacked probable cause to believe that the defendant was a Massachusetts resident. He further held that since the defendant was in possession of a valid Canadian driver's license, he was not in violation of G. L. c. 90, § 10, which allows a nonresident to drive in

the hearing, to wit: (1) in 1999, the Registry listed the defendant's home address as 55 W. Great Western Road, South Yarmouth; (2) in 2002-2003, his listed address was 585 Old Falmouth Road, Marstons Mills; and (3) as of May, 2007, his listed address was 189 Cammett Way, Marstons Mills. The defendant did not dispute that he owned two houses in Marstons Mills, at 585 Old Falmouth Road and 189 Cammett Way. He also admitted to frequently staying at his mother's house at 92 Diane Avenue, South Yarmouth, the address he used on his social security card.

[4] There is no question that the initial stop of the defendant was permissible. See *Commonwealth* v. *Santana,* 420 Mass. 205, 207 (1995). So too, there is no question of the authority to arrest for operating without a license. See G. L. c. 90, § 21, as amended by St. 1987, c. 83, § 2 ("Any officer . . . may arrest without a warrant . . . any person who . . . violates the provisions of the first paragraph of [G. L. c. 90, § 10]").

[5] Of note, the search uncovered marijuana, cocaine, two scales, baggies, an outdated Massachusetts license, personal papers listing two separate Massachusetts addresses, and $6,355 in cash.

the State under a valid foreign license. As the defendant had a valid registration, the judge found that there was no violation of G. L. c. 90, § 3,[6] which, the judge stated, quoting from § 3, "limits the operation of a motor vehicle owned by a non-resident and registered in a different state or country to no 'more than thirty days in the aggregate in any one year, or in any case where the owner thereof acquires a regular place of abode or business or employment within the commonwealth, beyond a period of thirty days after the acquisition thereof, except during such time as the owner thereof maintains in full force a policy of liability insurance . . . .' " The judge concluded that "[t]he statute's language requiring the thirty day period to occur 'in any one year' means that the Defendant could not possibly have been in the Commonwealth for thirty days during the year of his arrest because the date was January 20, 2006."[7]

The Commonwealth argues on appeal that the motion judge erred in granting the motion to suppress, because Tynan reasonably believed that the defendant was a Massachusetts resident driving without a license and Tynan, thus, had probable cause to arrest him without a warrant.

*Standard of review.* In reviewing a motion to suppress evidence, we adopt the motion judge's subsidiary findings of fact absent clear error. *Commonwealth* v. *Ocasio*, 434 Mass. 1, 4 (2001). Although we give substantial deference to the judge's ultimate findings and conclusions of law, the reviewing court must independently review the correctness of the judge's application of constitutional principles to the facts as found. *Commonwealth* v. *Eckert*, 431 Mass. 591, 593 (2000).

*Discussion.* We start with the observation that wading through the various provisions of c. 90 is akin to driving a car without windshield wipers on a dirt road on the side of a mountain at night during a blizzard.[8] With that observation, we press on.

---

[6]As amended through St. 2003, c. 46, §§ 88-95.

[7]The judge concluded that the defendant could not be in violation of § 3 because the period runs "in the aggregate within a calendar year" and the arrest was made fewer than thirty days into January of 2006. This strained reading of the statute is irrelevant to the officer's conclusion that the defendant had been living in Massachusetts for an extended period of years and was, in fact, a resident.

[8]We are, thus, heartened with the Legislature's attempt to clarify the laws

Of concern here are G. L. c. 90, § 3 (vehicles of nonresidents), § 8 (licenses to operate), and § 10 (operation of motor vehicles). Section 10 requires all persons operating motor vehicles in Massachusetts to be licensed, and failure to produce a valid license during a traffic stop can provide probable cause for an arrest. See *Commonwealth* v. *Lantigua*, 38 Mass. App. Ct. 526, 528 (1995), citing G. L. c. 90, §§ 10 & 21.

For our purposes, § 10, like § 8, distinguishes between residents and nonresidents.[9] Very simply, residents need a Massachusetts license to drive[10]; nonresidents do not so long as they possess a valid out-of-State license.[11] Needless to say, new residents must become licensed in Massachusetts.[12]

While the nonresident exception in § 10 merely permits nonresidents to drive in the State without a Massachusetts license, § 3 permits them to operate their out-of-State registered vehicles in Massachusetts, subject to insurance requirements.[13] In essence, § 3 relieves nonresidents who work, attend school, or own property in Massachusetts from having to register their cars in-State,

regarding operating under the influence. See House Bill No. 4291 (filed October 21, 2009).

[9] Under G. L. c. 90, § 1, a nonresident is "any person whose legal residence is not within the commonwealth." G. L. c. 90, § 1, definition of "Nonresident," appearing in St. 1953, c. 463, § 1. "The expression 'legal residence' has been used in the sense of domicil." *Rummel* v. *Peters*, 314 Mass. 504, 514 (1943). General Laws c. 90, § 3½, sets out various factors that require a person to be deemed a resident of Massachusetts.

[10] "No . . . person shall . . . operate [a motor vehicle] unless licensed by the registrar." G. L. c. 90, § 10, as appearing in St. 1985, c. 146.

[11] "Subject to the provisions of [§ 3], a nonresident who holds a license under the laws of the state or country in which he resides may operate any motor vehicle of a type which he is licensed to operate . . . ." G. L. c. 90, § 10.

[12] Section 10 is silent as to the number of days within which a new resident must obtain a license. Other statutes within G. L. c. 90 indicate time is of significance. See, e.g., G. L. c. 90, § 8 ("receipt" temporarily issued in lieu of license valid for sixty days); § 26A(*a*) (thirty days to notify Registry of name or address change).

[13] Such vehicles may be operated for no more than "thirty days in the aggregate in any one year or, in any case where the owner thereof acquires a regular place of abode or business or employment within the commonwealth, beyond a period of thirty days after the acquisition thereof, except during such time as the owner thereof *maintains in full force a policy of liability insurance* [that is equivalent to the amount or limits required under G. L. c. 90, § 34A, for Massachusetts residents]" (emphasis supplied). G. L. c. 90, § 3.

so long as they do not become residents. It does not, however, trump the requirement in § 10 that an individual who becomes a legal resident of Massachusetts must obtain an in-State license. See *Jenkins* v. *North Shore Dye House, Inc.*, 277 Mass. 440, 443 (1931) ("[Section 3] cannot . . . be construed to mean that one who has been a nonresident but who has ceased to be a nonresident because he has removed his residence from another State or country to this Commonwealth is entitled to the immunity extended to a nonresident").

Section 8 covers the application and examination requirements for obtaining a Massachusetts license. There is no exception for new residents that allows them to drive under their out-of-State licenses. In fact, G. L. c. 90, § 8, as amended through St. 2002, c. 313, § 2, provides in pertinent part: "If for any reason the registrar or his agents are unable to examine an applicant for a license promptly, the applicant [so long as s/he is duly licensed elsewhere] may be issued a receipt . . . [which] shall be carried in lieu of the license" for a period of up to sixty days.

The effect of the trial court's reading of § 3 is that, at least for purposes of a police officer's request to a driver, the production of a facially valid out-of-State license and registration is conclusive on the issue of residency. This stretches the nonresident exception under § 3 to the point where it overwhelms the requirements for residents under §§ 8 and 10. There is no question that § 3 allows a nonresident to acquire "a regular place of abode or business or employment in the commonwealth" and remain a nonresident; the question is whether the police can make a reasonable determination in the field that an individual has crossed the line from nonresident to resident.

Language from *Commonwealth* v. *Caceres*, 413 Mass. 749, 753 (1992), is instructive, if not controlling. "The decision not to permit Calderon [the passenger] to drive the vehicle away was based on the trooper's reasonable belief that Calderon was not authorized to operate the vehicle in Massachusetts. The uncontroverted evidence warranted an objectively reasonable belief that Calderon had been in the continental United States for three years and that Calderon should, but did not, have a license to operate other than the Puerto Rico license."

Like the trooper in *Caceres*, the police officer here possessed

a reasonable basis to conclude that the defendant resided in Massachusetts, requiring a local license. Indeed, it appears almost inescapable that the defendant was a resident. From the perspective of Sergeant Tynan, the defendant had lived and worked for years in Massachusetts, possessed a local driving record dating back to 1989, had at one point a Massachusetts license, drove a truck with a sticker on it for the local dump, and said he was planning on going the following day to the Registry to obtain a license.[14]

Under these circumstances, the officer was warranted in believing the defendant was a resident, requiring a local license. Not having one, he was subject to arrest. Since the sergeant had probable cause to arrest the defendant, the evidence seized is admissible.

> *Order allowing motion to suppress reversed.*

TRAINOR, J. (dissenting). I respectfully dissent from the majority opinion and begin by observing that

> "[i]t is well settled that a police inquiry in a routine traffic stop must end on the production of a valid license and registration unless the police have grounds for inferring that 'either the operator or his passengers were involved in the commission of a crime . . . or engaged in other suspicious conduct' (citations omitted)."

*Commonwealth* v. *Robie*, 51 Mass. App. Ct. 494, 497 (2001). See *Commonwealth* v. *Torres*, 424 Mass. 153, 158 (1997).

The incident we are considering was a routine traffic stop in which the defendant produced a valid driver's license. Once he provided a valid Canadian license, there was no basis for arrest under G. L. c. 90, § 21.[1] Although he could not produce his

---

[14]At the hearing, even more evidence was produced. See note 3, *supra.*

[1]General Laws c. 90, § 21, as amended by St. 1987, c. 83, § 2, provides, in pertinent part:

> "[An] officer . . . may arrest without a warrant . . . any person who, while operating a motor vehicle on any way, . . . violates the provisions of the first paragraph of [G. L. c. 90, § 10]."

registration (later determined to be valid), this fact does not take the incident out of the routine stop category, nor is the lack of registration an arrestable offense. See *Robie, supra* at 497 n.1 (noting that the penalty for failing to have the registration on his person or in his vehicle was a limited fine, the court observed that "the Commonwealth does not argue that the failure of the defendant to have the registration with him takes this matter out of the 'routine traffic stop' cases"). See also G. L. c. 90, § 21.[2]

Standard procedure in such a routine traffic stop would include the officer's requesting the operator's license and registration. If the officer has reason to believe that an out-of-State operator has been in the Commonwealth for more than thirty days, a copy of the operator's insurance policy or insurance certificate should be requested. See G. L. c. 90, § 3, as amended through St. 2003, c. 46, §§ 88-95. An operator's failure to have the insurance policy or certificate with him, however, like a failure to have the registration on one's person or in one's vehicle, neither is an arrestable offense nor does it provide probable cause to arrest.

Officer Tynan believed that the defendant should have had a Massachusetts driver's license because, in his words, "if you're gainfully employed and say if you move here from Rhode Island, you're here for over thirty days, you're required to get a Massachusetts license." Officer Tynan further testified that the thirty-day requirement was contained in c. 90 of the General

---

General Laws c. 90, § 10, first par., as appearing in St. 1985, c. 146, provides in pertinent part:

"No . . . person shall . . . operate [a motor vehicle] unless licensed by the registrar unless he possesses a receipt issued under [§ 8] for persons licensed in another state or country . . . *except as otherwise provided herein.* . . . Subject to the provisions of [§ 3], a *nonresident* [defined in § 1 as a *legal resident* of another state or country] may operate [a] motor vehicle . . . duly registered in this commonwealth or in any state or country; provided, that he has the license on his person . . . or in some easily accessible place, and that, as . . . determined by the registrar, his state or country grants substantially similar privileges to residents of this commonwealth . . . ." (Emphases supplied.)

[2]General Laws c. 90, § 21, first par., provides in pertinent part that "[a]ny arrest made pursuant to this paragraph shall be deemed an arrest for the criminal offense or offenses involved and not for any civil motor infraction arising out of the same incident."

Laws.[3] This interpretation is not the law, however. General Laws c. 90, § 3,[4] limits the operation of a motor vehicle owned by a nonresident (defined in G. L. c. 90, § 1, as the legal resident of another State or country) and registered in a different State or country to no "more than thirty days in the aggregate in any one year or, in any case where the owner thereof acquires a regular place of abode or business or employment within the commonwealth, beyond a period of thirty days after the acquisition thereof, *except during such time as the owner thereof maintains in full force a policy of liability insurance . . .* at least to the amount or limits required in a motor vehicle liability policy as defined in section thirty-four A" (emphasis supplied).

The majority cites *Jenkins* v. *North Shore Dye House*, 277 Mass. 440, 443 (1931), as authority for the argument that maintaining a residence here requires the acquisition of a Massachusetts driver's license. *Jenkins*, however, was decided pursuant to an earlier version of the statute which required the acquisition of a Massachusetts driver's license within thirty days of arriving in the Commonwealth. See G. L. c. 90, § 1, as amended through St. 1924, c. 189.[5] The law was changed shortly before *Jenkins* was decided, and the new definition of "non-resident" required the acquisition of a Massachusetts driver's license within thirty days of establishing a *legal* residence within the State. See St. 1931, c. 142, § 1.[6] This same act[7] rewrote §§ 3 and 10 of G. L. c. 90, so that there would be no time limit imposed on the acquisition of a Massachusetts driver's license for a nonresident (i.e., a legal resident of another State or country, note 6, *supra*) holding a valid driver's license from the State or country of his legal resi-

---

[3]The discussion at the hearing on the motion to suppress actually concerned only whether the thirty-day rule had been violated because the offense occurred on January 20, only twenty days into the calendar year and not whether a thirty-day limit is actually required by c. 90 under the facts of this case.

[4]As amended through St. 2003, c. 46, §§ 88-95.

[5]General Laws c. 90, § 1, as amended through St. 1924, c. 189, defined "Non-resident," as "any resident of any state or country who has no regular place of abode or business in the Commonwealth for a period of more than thirty days in the year . . . ."

[6]Section 1 of St. 1931, c. 142, amended G. L. c. 90, § 1, by inserting a new definition of a non-resident which reads: "Non-resident, any person whose *legal* residence is not within the commonwealth" (emphasis supplied).

[7]Statute 1931, c. 142, §§ 2 and 5.

dence, G. L. c. 90, § 10,[8] or on the acquisition of a Massachusetts registration for a vehicle registered in the State or country where the owner-operator was a legal resident so long as the nonresident maintained a level of automobile insurance equivalent to that required by a resident driver, G. L. c. 90, § 3. These two provisions have remained, in all aspects pertinent here, unchanged since 1931.[9] It appears that the Legislature determined that the protection of our citizens is best accomplished by a policy and a statutory scheme that requires adequate levels of liability insurance for anyone operating a vehicle under authority of an out-of-State driver's license and registration for more than thirty days within the Commonwealth. The statutory scheme neither asks nor expects police officers to make field determinations of a driver's *legal* residence. Such determinations are best made upon the presentation of more complete and competent evidence in a court of law. In these situations, however, a police officer is allowed, and expected, to request evidence of the required insurance coverage and may issue a citation and summons if such evidence is not produced.

Here, the officer never asked the defendant to produce the insurance certificate[10] at the scene, and the defendant had no obligation to volunteer the information. Had the officer asked for the certificate, and the defendant been unable to produce it, this would have only created an evidentiary presumption at a trial (usually involving an automobile accident), see G. L. c. 90, § 3,[11] not probable cause to arrest without a warrant.

The majority also cites dicta from *Commonwealth* v. *Caceres*,

---

[8]Provided the State or country granted "substantially similar privileges to residents of this commonwealth."

[9]See G. L. c. 90, § 3, as amended through St. 2003, c. 46, §§ 88-95, and G. L. c. 90, § 10, first par., as appearing in St. 1985, c. 146.

[10]Contrary to the majority's claim, the officer did not understand the legal, procedural, and practical requirements of G. L. c. 90, § 3 and § 10. Not only was there no inquiry at the scene concerning the insurance policy, there was no inquiry concerning the required insurance policy at the hearing on the motion to suppress.

[11]Chapter 90, § 3, is clear when it states that a failure to produce such policy or certificate evidence of the policy, "shall be prima facie evidence, that insurance was not being maintained as required by this section, and in any such action to recover damages proof of such failure at the time of the accident shall create a presumption, *which may be rebutted*, that such insurance was not then being maintained as so required" (emphasis supplied).

413 Mass. 749, 753 (1992), as being instructive, if not dispositive. *Caceres,* however, is neither dispositive nor even applicable to this case for a number of reasons. First, in making the statement quoted by the majority here, the court in *Caceres* was deciding a different question from that at issue in this case. The question in *Caceres* was only whether the police officer, who had already arrested the defendant in that case for other reasons, made a reasonable decision to have the defendant's vehicle towed instead of permitting the passenger, Calderon, to drive it; the question here, instead, is whether the officer had authority to arrest the defendant without a warrant under G. L. c. 90, § 21, for operating a motor vehicle without a license when the defendant had a valid Canadian driver's license and presented it to the officer. Second, to the extent that the language from *Caceres* may otherwise be instructive, the validity of the conclusion that the passenger probably was not authorized to operate in Massachusetts is dubious at best.[12] Lastly, and most significant, is the difference between the factual circumstances of the present case and those in *Caceres.* In *Caceres,* Calderon was determined to have been in the continental United States for three years, all the while using his driver's license issued in Puerto Rico. Here, the defendant had just recently acquired his New Brunswick, Canada, driver's license. Testimony at the hearing on the motion to suppress presented evidence that the defendant had reestablished his legal residence in Canada because of family issues (helping to care for his sick father). His Canadian license was both current and valid, and we can assume that the Canadian authorities made a deter-

---

[12]According to the language from *Caceres* that the majority considers to be dispositive of this case, every out-of-State student being educated in Massachusetts would be subject to arrest without a warrant for driving with his or her out-of-State license by the time of his or her senior year. Similarly, foreign nationals working seasonal employment on Cape Cod, for example, would be subject to arrest without a warrant at the end of their third summer or fall of working in Massachusetts. Nowhere in *Caceres* does the court find that the passenger, Calderon, was a *legal* resident of Massachusetts, that he had abandoned his legal residence in Puerto Rico and become a legal resident of a State, that he was not a student or a seasonal employee who traveled intermittently back to Puerto Rico, or even that his presence in the United States had been continuous for the previous three years. The court only determined that because the officer believed that Calderon was in the United States for three years, he was required to have a driver's license from Massachusetts (or another State). This is not what G. L. c. 90, §§ 3 and 10, require.

mination of the defendant's change of residence.[13] In addition, during the stop and field investigation, the officer checked the defendant's driving record and discovered that while he had a relatively long history of driving on a Massachusetts license, no such license was currently in existence, and no suspensions were outstanding. The time line was consistent with his Canadian license being valid and having been issued *after* the defendant had reestablished his legal residence in New Brunswick, Canada (and after the expiration of his Massachusetts license). Contrary to the majority's claim, the officer's justification to arrest the defendant without a warrant was based entirely on his misunderstanding the requirements of G. L. c. 90, §§ 3 and 10. The existence of the defendant's Massachusetts driving history was irrelevant and could not provide the basis for the officer's actions. The officer acted upon and testified to his belief that the Canadian license, although otherwise valid, could not be used in the Commonwealth for more than thirty days. This was the relevance of the defendant's driving history to the officer and was entirely the justification for arresting him. The officer here based his actions on a mistake of law, not upon a mistake of fact. Most Federal circuits agree that a mistake of law will not support probable cause or reasonable suspicion.[14] "[F]or a Fourth Amendment analysis, the difference between a mistake of law and a mistake of fact is critical. . . . [A]n officer's reasonable mistake of fact may provide the objective grounds for reasonable suspicion or probable cause required to justify a traffic stop, but an officer's mistake of law may not." *United States* v. *Chanthasouxat*, 342 F.3d 1271, 1276 (11th Cir. 2003). An officer's mistake of fact is determined to be either reasonable or unreasonable. What is reasonable will be decided based on the unique and specific facts of an individual case. "[T]he Fourth Amendment requires only a

---

[13]Without making a specific finding, the motion judge nevertheless treated the defendant as if he were a legal Canadian resident. His residency was not an issue at the hearing because the judge interpreted G. L. c. 90, §§ 3 and 10, as requiring a Massachusetts driver's license after being present in the Commonwealth for more than thirty days in a calendar year. As we have previously discussed, this is not what c. 90 requires.

[14]An exception to this general rule exists when, despite an officer's mistake of law as the basis for an arrest, there exists independent and contemporaneous probable cause to arrest. See *Devenpeck* v. *Alford*, 543 U.S. 146 (2004). Here, there was no alternative basis for the arrest.

reasonable assessment of the facts, not a perfectly accurate one." *United States* v. *Cashman*, 216 F.3d 582, 587 (7th Cir. 2000). Here, even though the officer may have acted in good faith, "the good faith exception to the exclusionary rule . . . should not be extended to excuse a vehicular search based on an officer's mistake of law." *United States* v. *Chanthasouxat*, 342 F.3d at 1280. See *United States* v. *Gross*, 550 F.3d 578, 584 n.2 (6th Cir. 2008) ("the vast majority of [Federal] circuits to decide this issue have concluded that an officer's mistake of law, even if made in good faith, cannot provide grounds for reasonable suspicion or probable cause, because an officer's mistake of law can never be objectively reasonable"). See also *United States* v. *Twilley*, 222 F.3d 1092, 1096 (9th Cir. 2000) (California police officer's good faith but mistaken belief that State law required two license plates rendered stop of driver whose car had one Michigan plate, in conformity with Michigan law, unconstitutional); *Commonwealth* v. *Quezada*, 67 Mass. App. Ct. 693, 695-696 (2006), *S.C.*, 450 Mass. 1030 (2008) (officer's good faith mistake as to scope of G. L. c. 111B, § 8, so-called protective custody statute, did not justify stop).

In summary, the defendant was arrested subsequent to a routine traffic stop. He produced a valid Canadian driver's license but the arresting officer believed that G. L. c. 90 allowed operation of a motor vehicle under authority of an out-of-State license for a period of time not greater than thirty days. The defendant's previous Massachusetts driving record and residency, however, was irrelevant to the fact that he had reestablished his Canadian residency and obtained a valid Canadian driver's license and registration. The officer's determination of probable cause to arrest the defendant was based entirely on his erroneous understanding that G. L. c. 90 required an out-of-State driver to obtain a Massachusetts driver's license after being present in the Commonwealth for thirty days. Regardless of the officer's good faith, the arrest was entirely based on a mistake of law, and with no alternative legitimate basis because the defendant was no longer a Massachusetts legal resident, having reestablished his legal residence in Canada. Because the officer's arrest of the defendant was based solely on a mistake of law, it was illegal, and the evidence discovered in the search pursuant to that arrest must be suppressed. The order of the trial court allowing the motion to suppress should be affirmed.