## Commonwealth vs. Kristian A. Chown.

Barnstable. March 7, 2011. - May 20, 2011.

Present: Ireland, C.J., Spina, Cowin, Cordy, Botsford, & Gants, JJ.[1]

*Motor Vehicle,* License to operate. *License. Arrest. Constitutional Law,* Search and seizure, Arrest, Probable cause. *Probable Cause. Search and Seizure,* Probable cause, Fruits of illegal arrest. *Practice, Criminal,* Motion to suppress.

Discussion of the statutory scheme regarding the requirement that persons operating a motor vehicle on a way in Massachusetts have a Massachusetts driver's license, and the exceptions to that requirement. [761-763]

A Superior Court judge properly granted a criminal defendant's pretrial motion to suppress drugs, money, and other evidence seized by police during an inventory search of the defendant's vehicle following his arrest at a lawful traffic stop, where the police officer who stopped the defendant's vehicle had no probable cause to believe that any of the factors in G. L. c. 90, § 3 1/2, were present to show that the defendant was a Massachusetts resident, and therefore, there was no basis for arresting the defendant under G. L. c. 90, § 21, for operation of a motor vehicle in Massachusetts without a Massachusetts driver's license once the defendant produced what appeared to be a valid Canadian driver's license. [763-767]

Indictments found and returned in the Superior Court Department on May 12, 2006.

A pretrial motion to suppress evidence was heard by *Richard F. Connon,* J.

An application for leave to prosecute an interlocutory appeal was allowed by *Botsford,* J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by her to the Appeals Court. After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Julia K. Holler,* Assistant District Attorney, for the Commonwealth.

*James Silver* for the defendant.

---

[1]Justice Cowin participated in the deliberation on this case prior to her retirement.

IRELAND, C.J. On January 20, 2006, the defendant, Kristian A. Chown, was stopped for speeding and then arrested for operating a motor vehicle without a license in violation of G. L. c. 90, § 10. During the subsequent inventory search of his motor vehicle, police recovered drugs, cash, and other items. As a result, the defendant was indicted for trafficking in cocaine, in violation of G. L. c. 94C, § 32E (*b*) (2), and possession of marijuana with intent to distribute, in violation of G. L. c. 94C, § 32C (*a*). The defendant moved to suppress the evidence recovered from the inventory search, contending that under the Fourth Amendment to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights[2] the evidence was the fruit of an unlawful arrest, the arrest being unlawful because the defendant did not need a Massachusetts driver's license and possessed a valid Canadian driver's license at the time of the stop. After an evidentiary hearing, a Superior Court judge agreed and allowed the motion. A single justice of this court granted the Commonwealth leave to pursue in the Appeals Court an interlocutory appeal from the judge's order, see Mass. R. Crim. P. 15 (a) (2), as appearing in 422 Mass. 1501 (1996).[3] A divided panel of the Appeals Court reversed the order of suppression. *Commonwealth* v. *Chown*, 76 Mass. App. Ct. 684, 690 (2010). We granted the defendant's application for further appellate review. Because the arresting officer did not, in connection with the defendant's arrest, take into account the statutory factors enumerated in G. L. c. 90, § 3 ½, for determining Massachusetts residency, and thus lacked probable cause to arrest the defendant for operating without a Massachusetts driver's license, we affirm the order allowing the defendant's motion to suppress.

1. *Background.* In reviewing a ruling on a motion to suppress, "we accept the judge's subsidiary findings of fact absent clear error 'but conduct an independent review of his ultimate findings and conclusions of law.' " *Commonwealth* v. *Scott*, 440 Mass. 642, 646 (2004), quoting *Commonwealth* v. *Jimenez*, 438 Mass. 213, 218 (2002). We summarize the judge's findings of

---

[2]In his motion to suppress, the defendant did not argue that art. 14 of the Massachusetts Declaration of Rights affords him any greater protection than the Fourth Amendment to the United States Constitution.

[3]The trial was stayed pending resolution of the interlocutory appeal.

fact, supplemented with uncontested testimony adduced at the evidentiary hearing. See *Commonwealth* v. *Garcia*, 443 Mass. 824, 828 (2005).

The defendant worked part time in Hyannis as a bartender at a restaurant that was owned by his stepfather.[4] During the late evening on January 20, 2006, the defendant left the restaurant parking lot in his extended cab pickup truck and was observed exceeding the posted speed limit by Sergeant Kevin J. Tynan of the Barnstable police department. Sergeant Tynan activated his overhead lights on his marked cruiser, and the defendant pulled his truck into a commercial parking lot.

As Sergeant Tynan approached the truck he noticed that it had a registration plate from New Brunswick, Canada. He also observed that the rear window of the truck had been smashed, with weather stripping hanging out. As he approached the driver's side of the truck, he recognized the driver. Sergeant Tynan had been a patron at the restaurant a few times. The defendant also was familiar to Sergeant Tynan because Sergeant Tynan had interacted with him previously, including in 2005, in response to a call made by the defendant and his then girl friend from a house owned by the defendant at 585 Old Falmouth Road in Marstons Mills.[5]

The defendant presented Sergeant Tynan with a New Brunswick license, listing a New Brunswick address and containing an expiration date of July 8, 2007, but could not locate and produce the truck's registration.[6] Sergeant Tynan informed the defendant that he had been stopped for speeding. Sergeant Tynan

---

[4]The defendant testified that this was his only job.

[5]The defendant did not dispute that he owns another home in Marstons Mills, would sometimes stay there as well as at his mother's house in South Yarmouth, and used his mother's address in connection with obtaining a Social Security card. At the evidentiary hearing on the motion, he testified that, at the time of the arrest in January, 2006, he legally resided in New Brunswick, Canada, and went back and forth from Canada to Massachusetts to help take care of his sick grandfather, and that when he was in Massachusetts, he slept at his mother's house in South Yarmouth. He further testified that he rented his properties in Massachusetts.

[6]In a brief filed after the evidentiary hearing on the motion to suppress, the defendant stated that it was "undisputed" that his truck was validly registered and insured in Canada. Although the Commonwealth did not contest these facts, there was no evidence of these facts submitted at the evidentiary hearing.

had personal prior knowledge that the defendant previously had possessed a Massachusetts driver's license (that had expired). Sergeant Tynan inquired why the defendant did not have a Massachusetts driver's license. The defendant replied that he planned on going to the registry of motor vehicles (registry) the next morning to obtain one.

Sergeant Tynan returned to his cruiser to run a record check with the registry, which confirmed that the defendant's Massachusetts driver's license had expired and revealed a lengthy history of in-State motor vehicle violations committed by the defendant, dating back to 1989, with various license suspensions and reinstatements.[7] At the time of the stop, however, there were no current suspensions or revocations. Because Sergeant Tynan did not have access to Canadian registry records, he was not then able to verify the validity of the defendant's Canadian driver's license; the Commonwealth does not dispute that the license was valid.

Sergeant Tynan informed the defendant that he was under arrest for operating a motor vehicle without a Massachusetts license. The defendant also was charged with failing to have his registration in possession and speeding.[8] Sergeant Tynan testified at the evidentiary hearing that he made the arrest because he had learned at the police academy that, "if you're gainfully employed in the Commonwealth, residing there, have a place of address, [then] you have to get a Massachusetts driver's license."

Sergeant Tynan requested the assistance of another officer who, on his arrival, transported the defendant to the police station. Pursuant to the department's written inventory policy, because of the damage to the truck's rear window, Sergeant Tynan needed to secure the vehicle and conduct an inventory. While conducting the inventory search, he smelled a strong odor of marijuana emanating from the back seat. There, under the rear seat, he recovered a backpack that contained drugs and two scales. He also found credit cards, a check from an account

[7]The judge indicated that he would consider only the defendant's driving history in Massachusetts in the context of whether the defendant had been a resident of Massachusetts beyond thirty days.

[8]There is no dispute that these two infractions do not amount to arrestable offenses.

in the defendant's name with the Old Falmouth Road address, a piece of mail addressed to the defendant at the Old Falmouth Road address, and cash in the amount of $6,355. Sergeant Tynan noticed a 2002 local "dump sticker" affixed to the window of the truck.

In allowing the defendant's motion to suppress, the judge noted that the defendant had produced a valid Canadian license and that, under G. L. c. 90, § 10, a nonresident may operate a motor vehicle in Massachusetts "in accordance with section three [of G. L. c. 90]" and if "duly licensed under the laws of the state or country where such vehicle is registered and has such license on his person or in the vehicle in some easily accessible place." While § 3 of G. L. c. 90 limits the operation of a motor vehicle owned by a nonresident and registered in a different country to no "more than thirty days in the aggregate in any one year or, in any case where the owner thereof acquires a regular place of abode or business or employment within the commonwealth, beyond a period of thirty days after the acquisition thereof, except during such time as the owner thereof maintains in full force a policy of liability insurance," the judge noted that a violation of this section results in a fine and does not give a police officer authority to arrest. In addition, the judge concluded that the defendant could not have been in violation of § 3 because the period runs "in the aggregate within a calendar year" and the arrest was made fewer than thirty days into January, 2006. The judge rejected the Commonwealth's evidence of the defendant's ownership of property in Massachusetts as being relevant to the determination of probable cause at the time of the arrest. The judge concluded that Sergeant Tynan lacked probable cause to believe that the defendant was a resident of Massachusetts.

The Appeals Court, by a divided panel, reversed, concluding that Sergeant Tynan was warranted in believing the defendant was a Massachusetts resident and therefore was required to have a Massachusetts driver's license. *Commonwealth* v. *Chown,* 76 Mass. App. Ct. 684, 690 (2010). The Appeals Court reasoned that "it appears almost inescapable that the defendant was a [Massachusetts] resident [because] [f]rom the perspective of Sergeant Tynan, the defendant had lived and worked for years

in Massachusetts, possessed a local driving record dating back to 1989, had at one point a Massachusetts license, drove a truck with a sticker on it for the local dump, and said he was planning on going the following day to the [r]egistry to obtain a license." *Id.* Because Sergeant Tynan had probable cause to arrest the defendant, the Appeals Court determined that the evidence seized thereafter was admissible. *Id.* As previously noted, we granted the defendant's application for further appellate review.

2. *Discussion.* As an initial matter, there is no question that Sergeant Tynan had authority to stop the defendant for speeding. See *Commonwealth* v. *Bacon*, 381 Mass. 642, 644 (1980), and cases cited ("Where the police have observed a traffic violation, they are warranted in stopping a vehicle"). What we must decide is whether Sergeant Tynan thereafter had a lawful basis to arrest the defendant. An overview of the statutory scheme is in order.

a. *Statutory scheme.* As relevant here, under G. L. c. 90, § 10, a "person"[9] who is sixteen years of age or older is prohibited from "operat[ing] a motor vehicle upon any way [in Massachusetts]" without first obtaining a Massachusetts driver's license. Section 10 contains several exceptions to the Massachusetts driver's license requirement. Operation of a motor vehicle in Massachusetts without a Massachusetts driver's license, for example, is permitted "for persons licensed in another state or country" if the person "possesses a receipt issued under [G. L. c. 90, § 8]."[10] G. L. c. 90, § 10, first par. It also is permitted with respect to a "nonresident"[11] subject to certain limitations as follows:

> "The motor vehicle of a nonresident may be operated on the ways of the commonwealth in accordance with [G. L. c. 90, § 3,] by its owner . . . without a license

---

[9]The term "[p]ersons" means "wherever used in connection with the registration of a motor vehicle, all persons who own or control such vehicles as owners, or for the purpose of sale, or for renting, as agents, salesmen or otherwise." G. L. c. 90, § 1.

[10]The defendant does not claim that he possessed such a receipt.

[11]The term "[n]on-resident" means "any person whose legal residence is not within the commonwealth." G. L. c. 90, § 1. General Laws c. 90, § 3 ½, lists various factors that, if present, require a person to be "deemed" a resident of the Commonwealth for purposes of G. L. c. 90.

from the registrar [of motor vehicles] if the nonresident operator is duly licensed under the laws of the state or country where such vehicle is registered and has such license on his person or in the vehicle in some easily accessible place. Subject to the provisions of [§ 3], a nonresident who holds a license under the laws of the state or country in which he resides may operate any motor vehicle of a type which he is licensed to operate under said license, duly registered in this commonwealth or in any state or country; provided, that he has the license on his person or in the vehicle in some easily accessible place, and that, as finally determined by the registrar, his state or country grants substantially similar privileges to residents of this commonwealth and prescribes and enforces standards of fitness for operations of motor vehicles substantially as high as those prescribed and enforced by this commonwealth."

G. L. c. 90, § 10, first par.

General Laws c. 90, § 3, first par., provides in pertinent part:

"Subject to the provisions of [G. L. c. 90, § 3A (pertaining to the appointment of registrar as attorney for purposes of service of process),] and except as otherwise provided in this section and in [§ 10], *a motor vehicle . . . owned by a non-resident who has complied with the laws relative to motor vehicles . . . and the registration and operation thereof, of the state or country of registration, may be operated on the ways of this commonwealth without registration under this chapter, to the extent, as to length of time of operation and otherwise, that, as finally determined by the registrar, the state or country of registration grants substantially similar privileges in the case of motor vehicles . . . duly registered under the laws and owned by residents of this commonwealth; provided, that no motor vehicle . . . shall be so operated on more than thirty days in the aggregate in any one year or, in any case where the owner thereof acquires a regular place of abode or business or employment within the commonwealth, beyond a period of thirty days after the acquisition thereof, except during such time as the owner thereof maintains in full force a policy of liability insurance* providing indemnity for or

protection to him, and to any person responsible for the operation of such motor vehicle . . . with his express or implied consent, against loss by reason of the liability to pay damages to others for bodily injuries, including death at any time resulting therefrom, caused by such motor vehicle . . . , at least to the amount or limits required in a motor vehicle liability policy as defined in [G. L. c. 90, § 34A]" (emphasis added).

Operation of a motor vehicle in Massachusetts without a proper license is a violation of law and an arrestable offense. See G. L. c. 90, § 21, first par. ("Any officer . . . may arrest without a warrant . . . any person who, while operating a motor vehicle on any way, . . . violates the provisions of the first paragraph of [G. L. c. 90, § 10]"). In addition, "[a]ny arrest made pursuant to [G. L. c. 90, § 21, first par.,] shall be deemed an arrest for the criminal offense or offenses involved and not for any civil motor vehicle infraction arising out of the same incident." *Id.*

b. *Basis for arrest.* The Commonwealth argues that Sergeant Tynan properly arrested the defendant for driving without a Massachusetts license because, based on the facts then known to Sergeant Tynan, he had probable cause to believe that the defendant was a resident of Massachusetts and was driving without a valid Massachusetts driver's license. "Where, as is the case here, an arrest and attendant search are made without a warrant, the Commonwealth bears the burden of establishing that the actions of the police met constitutional standards." *Commonwealth* v. *Santaliz*, 413 Mass. 238, 240 (1992). "Both the Fourth Amendment . . . and art. 14 . . . require that an arrest upon which a search is undertaken be based on probable cause." *Id.*, and cases cited. "[P]robable cause exists where, *at the moment of arrest*, the facts and circumstances within the knowledge of the police are enough to warrant a prudent person in believing that the individual arrested has committed or was committing an offense" (emphasis added). *Id.* at 241, quoting *Commonwealth* v. *Storey*, 378 Mass. 312, 321 (1979), cert. denied, 446 U.S. 955 (1980). "The officers must have entertained rationally 'more than a suspicion of criminal involvement, something definite and substantial, but not a prima facie case of

the commission of a crime, let alone a case beyond a reasonable doubt.' " *Commonwealth* v. *Santaliz, supra,* quoting *Commonwealth* v. *Rivera,* 27 Mass. App. Ct. 41, 45 (1989). "[A]n objective test is used to determine whether probable cause exists." *Commonwealth* v. *Franco,* 419 Mass. 635, 639 (1995). We conclude that the Commonwealth did not satisfy its burden in this case.

By producing a Canadian driver's license to Sergeant Tynan, the defendant, essentially, was claiming to be a "nonresident" who, subject to the provisions of G. L. c. 90, §§ 3 and 10, may lawfully operate a motor vehicle in Massachusetts without a Massachusetts driver's license. Under G. L. c. 90, § 3 1/2, however, "[a]ny person claiming to be a nonresident for purposes of [G. L. c. 90, § 3], shall be deemed to be a resident of the commonwealth" in certain circumstances. G. L. c. 90, § 3 1/2 (*a*) (1)-(13) (listing various factors for deeming Massachusetts residency, such as whether person is registered to vote in Massachusetts; has homeowner's liability insurance coverage on property declared to be occupied as principal residence; receives public assistance for himself or dependent child; or obtains any benefit, exemption, deduction, or privilege by claiming principal residence in Commonwealth). One of the enumerated factors must be present for a person to be "deemed" a Massachusetts resident (for purposes of G. L. c. 90). This requirement no doubt exists because the determination of residency otherwise typically is "largely a question of fact," *Rummel* v. *Peters,* 314 Mass. 504, 517 (1943), and the statute "contemplates that a [person] may be a nonresident although he has a regular place of abode or residence here." *Id.* at 513. Thus, the factors in § 3 1/2 (*a*) (1)-(13) somewhat simplify the issue by being the only ones that are determinative. In addition, the statute requires the custodian of the records that contain the information referred to in § 3 1/2 (*a*) (1)-(13) to provide access to that information to "a local or state police officer" "for purposes of enforcing [G. L. c. 90]." G. L. c. 90, § 3 1/2 (*b*). As such, a legal determination of residency (for purposes of G. L. c. 90) involves some investigation and as a practical matter is not one that can be made in the field based on suspicions that do not correspond to the various residency factors enumerated in § 3 1/2 (*a*).

Here, when Sergeant Tynan arrested the defendant, although he suspected that the defendant was a resident of Massachusetts for various reasons, he had not conducted an investigation into the matter or obtained any of the relevant determinative information under and pursuant to § 3 ½.[12] Consequently, Sergeant Tynan did not base his decision to arrest on information that was "definite and substantial," *Commonwealth* v. *Santaliz, supra,* in the context of the confines of the statutory scheme, in particular, G. L. c. 90, § 3 ½, and thus, he did not possess the requisite probable cause to arrest the defendant for operating without a *Massachusetts* driver's license.

There is no doubt that the Legislature has limited the period of time that a nonresident (who possesses a license from another State or country) may operate a motor vehicle in Massachusetts without a Massachusetts driver's license and without furnishing liability insurance. The requirements exist for the protection of the public.[13] *Apger* v. *New York Cent. R.R.*, 310 Mass. 495, 497 (1941). Just as the Legislature has prohibited all resident operators of Massachusetts from operating a motor vehicle in Massachusetts without furnishing the insurance protection required under the compulsory motor vehicle insurance law, see *Van-Dresser* v. *Firlings*, 305 Mass. 51, 53 (1940), the Legislature has extended this public policy to require liability insurance as set forth in G. L. c. 90, § 3, of nonresidents operating in Massachusetts *after* a limited period of time. See *Apger* v. *New York*

[12]At the time of the defendant's arrest Sergeant Tynan had knowledge that the defendant worked nearby. This factor alone is not one enumerated in G. L. c. 90, § 3 ½. In addition, while Sergeant Tynan had information that the defendant was living in Massachusetts, this factor also is not one enumerated in § 3 ½. Rather, § 3 ½ speaks of occupying real estate in Massachusetts "as a principal residence." Last, although obtaining a "license . . . by claiming principal residence in the commonwealth" is a factor in determining residency, *id.*, the defendant's prior Massachusetts driver's license had long expired at the time of the arrest and thus bore no relevance to his legal residency in January, 2006. The defendant's statement to Sergeant Tynan of his intention to obtain a Massachusetts driver's license likewise adds nothing of relevance and may have been made to appease the sergeant or to end the confrontation.

[13]We note also that, for a nonresident lawfully to operate a motor vehicle in Massachusetts without a Massachusetts driver's license, "his state or country [must] grant[] substantially similar privileges to residents of this commonwealth." G. L. c. 90, § 10.

*Cent. R.R.*, *supra*. Specifically, the Legislature has imposed two temporal limitations. First, in the absence of the requisite liability insurance, a nonresident may not operate a motor vehicle in Massachusetts for "more than thirty days in the aggregate in any one year." G. L. c. 90, § 3, first par. Second, in the absence of the requisite liability insurance, a nonresident may not operate a motor vehicle in Massachusetts "beyond a period of thirty days after the acquisition [of]" "a regular place of abode or business or employment [in Massachusetts]." *Id.* See *VanDresser* v. *Firlings*, *supra* at 54 (phrase "period of thirty days" begins on fixed date and ends after expiration of thirty days from that date). These provisions serve to "eliminate the evil of uncompensated injuries caused to travellers by owners of automobiles who were unable to satisfy the claims of the victims of their negligence." *Apger* v. *New York Cent. R.R.*, *supra* at 498.

If a police officer has reason to believe that a nonresident driver is in violation of these temporal limitations, the officer may, in a routine traffic stop, request a copy of the operator's liability policy or insurance certificate.[14] An operator's failure to produce evidence of insurance may result in the issuance of a citation or summons, but it is not an arrestable offense under G. L. c. 90, and does not provide a basis for establishing probable cause to arrest. Here, where there was not probable cause to believe that any of the factors in G. L. c. 90, § 3 ½, were present to show that the driver was a Massachusetts resident, there was no basis for his arrest under G. L. c. 90, § 21 ("officer . . . may arrest without a warrant . . . any person who, while operating a motor vehicle on any way, . . . violates the provisions of the first paragraph of [G. L. c. 90, § 10[15]]"),

---

[14]Sergeant Tynan considered the defendant to be a resident, not a nonresident, so production of these materials would not have made any difference to Sergeant Tynan. Because the Commonwealth does not contest the validity of the defendant's registration and insurance, and the nature or extent of reciprocal privileges granted by New Brunswick, Canada, to motorists of Massachusetts, the defendant's operation of his truck in Massachusetts beyond the temporal limits set forth in G. L. c. 90, § 3, was not shown to be unlawful.

[15]General Laws c. 90, § 10, first par., provides that a "motor vehicle of a nonresident may be operated on the ways of the commonwealth . . . by its owner . . . if the nonresident operator is duly licensed under the laws of the state or country where such vehicle is registered and has such license on his person or in the vehicle in some easily accessible place."

once the operator produced what appeared to be a valid Canadian license.

We speak to one final matter. We agree with the motion judge and the dissenting opinion in *Commonwealth* v. *Chown*, 76 Mass. App. Ct. 684, 693-695 (2010) (Trainor, J., dissenting), that *Commonwealth* v. *Caceres*, 413 Mass. 749 (1992), is not instructive here. In that case, an inventory search of a vehicle was challenged by the defendant who had been the driver. *Id.* at 750. The defendant did not contest the lawfulness of the stop or of his arrest (he had given the State trooper who stopped him a false name in violation of G. L. c. 90, § 25). *Id.* We rejected the defendant's claim that the circumstances did not justify seizing his vehicle and conducting an inventory search. *Id.* In so doing, we stated that "the evidence justified a reasonable conclusion that the passenger [who produced a driver's license from Puerto Rico] was not authorized to operate a motor vehicle in Massachusetts [and that] there was no alternative but to seize the vehicle and to conduct an inventory search." *Id.* at 752. We explained that the passenger was not authorized to operate the vehicle because of "uncontroverted evidence" that warranted "an objectively reasonable belief that [the passenger] had been in the continental United States for three years and . . . did not . . . have a license to operate other than the Puerto Rico license." *Id.* at 753. In this case, there was no such "uncontroverted evidence" that, at the time of his arrest in January, 2006, the defendant had been in Massachusetts for three years. Just prior to being arrested the defendant had produced what appeared to be a valid, and recently acquired, Canadian driver's license showing a New Brunswick address, and at the evidentiary hearing on his motion to suppress the defendant maintained that, at the time of his arrest, he was a resident of New Brunswick, Canada.

3. *Conclusion.* The order allowing the defendant's motion to suppress is affirmed.

*So ordered.*